# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| FOTONATION LIMITED and DIGITALOPTICS CORP. MEMS, <br><br> Plaintiffs, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC. <br><br> Defendants. | Civil Action No. 2:17-cv-669-RWS <br><br> **JURY TRIAL DEMANDED** |

### PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

A.    "tracking" terms ('274: Cl. 1, 5, 9; '932: Cl. 7, 13; '715 Cl. 1; '897: Cl. 5; '016: Cl. 1) (Op. Br. At 4) ...................................................................1

B.    "main acquired image[s]" ('218: Cl. 14; '897: Cl. 1, 4, 5, 14) / "main target image" ('897: Cl. 5) (Op. Br. at 7)...........................................2

C.    "preview image stream" ('897: Cl. 1, 5) (Op. Br. at 8) ..............................2

D.    "applying different subsets of face detection windows to different subsets of the integral images" ('897: Cl. 5) (Op. Br. at 9)..................................3

E.    "analyzing one or more characteristics of said region of said third preview image" ('897: Cl. 14) (Op. Br. at 11)........................................................3

F.    "concentrated face detection" ('218: Cl. 1) (Op. Br. at 12)........................4

G.    "an image stream of … reference images" ('218: Cl. 1, 26) / "a reference image stream" ('218: Cl. 1, 26) (Op. Br. at 13)........................................5

H.    "focus position of the region of interest" ('715: Cl. 1) (Op. Br. at 14)...................6

I.    "acquiring a temporally sequential collection of two or more images of substantially a same scene" ('016: Cl. 1) (Op. Br. at 17) ........................7

J.    "determining default values of one or more parameters" ('274: Cl. 1, 5, 9; '016: Cl. 1) (Op. Br. at 18).......................................................................7

K.    "[selectively applying/applying] fill flash" ('274: Cl. 1, 5, 9; '932: 2, 3, 8, 9, 14, 15) / "automatically providing a fill flash" ('274: Cl. 1, 5, 9) (Op. Br. at 21) ..............................................................................................8

L.    "collection of low resolution images" ('274: Cl. 1, 5, 9) (Op. Br. at 24) ...............8

M.    "analyze one or more partial face regions" / "partial face region" ('674: Cl. 29) (Op. Br. at 27)...............................................................................9

N.    "recognize one or more faces or types of faces, or both, within the first image" ('674: Cl. 40) (Op. Br. at 29)....................................................10

O.    "… one mechanical resonance frequency" ('829: Cl. 1, 11) (Op. Br. at 31).........11

P.    "substantially zero" ('829: Cl. 11) (Op. Br. at 32)..................................11

Q.    "generating a waveform…" ('829: Cl. 1) (Op. Br. at 34).......................12

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Abbott Labs. v. Andrx Pharm., Inc.,*
    473 F.3d 1196 (Fed. Cir. 2007) ................................................................. 8

*Abbott Labs. v. Sandoz, Inc.,*
    566 F.3d 1282 (Fed. Cir. 2009) ................................................................. 12

*Aventis Pharm. Inc. v. Amino Chems. Ltd.,*
    715 F.3d 1363 (Fed. Cir. 2013) ................................................................. 6

*BASF Corp. v. Johnson Matthey Inc.,*
    875 F.3d 1360, (Fed. Cir. 2017) ................................................................. 9

*Edwards Lifesciences LLC v. Cook Inc.,*
    582 F.3d 1322 (Fed. Cir. 2009) ................................................................. 8, 9

*Hamilton Prod. v. O'Neill,*
    492 F. Supp. 2d 1328 (M.D. Fla. 2007) ..................................................... 12

*Howmedica Osteonics Corp. v. Zimmer, Inc.,*
    822 F.3d 1312 (Fed. Cir. 2016) ................................................................. 6

*Imperium (IP) Holdings, Inc. v. Apple, Inc.,*
    920 F. Supp. 2d 747 (E.D. Tex. 2013) ....................................................... 12

*Intellectual Ventures II LLC v. BITCO Gen. Ins. Corp.,*
    No. 6:15-cv-59, 2016 WL 125594 (E.D. Tex. Jan. 11, 2016) ..................... 4

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.,*
    No. 2:13-CV-655, 2014 WL 4352489 (E.D. Tex. Sept. 2, 2014) ............... 4

*Orion IP, LLC v. Mercedes-Benz USA, LLC,*
    516 F. Supp. 2d 720 (E.D. Tex. 2007) ....................................................... 4, 5

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................. 10

*Saint Lawrence Communications LLC v. Apple. Inc.,*
    No. 2:16-CV-82, Dkt. 170 (E.D. Tex., July, 5 2017) ................................. 9

*Thorner v. Sony Computer Entm't Am. LLC,*
    669 F.3d 1362 (Fed. Cir. 2012) ................................................................. 1

*Union Pac. Res. v. Chesapeake Energy Corp.,*
    236 F.3d 684 (Fed. Cir. 2001) ................................................................... 4

TABLE OF EXHIBITS

| Exhibit Number | Description |
|----------------|-------------|
| 1 | U.S. Patent No. 8,331,715 |
| 2 | U.S. Patent No. 7,574,016 |
| 3 | U.S. Patent No. 7,860,274 |
| 4 | U.S. Patent No. 8,908,932 |
| 5 | U.S. Patent No. 7,916,897 |
| 6 | U.S. Patent No. 6,301,370 |
| 7 | U.S. Patent No. 7,620,218 |
| 8 | Webster's II New College Dictionary (3d ed.) |
| 9 | US Patent No. 7,844,076 |
| 10 | SAMS230-0100349 |
| 11 | U.S. Patent No. 8,254,674 |
| 12 | App. No. 61/221,455 |
| 13 | U.S. Patent No. 7,697,829 |
| 14 | Provisional Application No. 60/713,971 |
| 15 | App. No. 11/219,137 |

### A.    "tracking" terms ('274: Cl. 1, 5, 9; '932: Cl. 7, 13; '715 Cl. 1; '897: Cl. 5; '016: Cl. 1) (Op. Br. At 4)

The parties' "tracking" constructions differ only in two ways: Samsung adds requirements of (1) "frame to frame" tracking of (2) a "location."[1]  *See* Op. Br. at 4-5.

First, Samsung argues that its "frame to frame" limitation – which FotoNation's opening brief also refers to as "frame by frame" – clarifies that tracking cannot "operate on a single instant in time."  Resp. Br. at 2, 4 (emph. omitted).  But both parties' proposed constructions already require tracking over time: FotoNation's requires tracking "in the digital images," plural, "in a stream" and each of Samsung's various constructions includes a requirement such as tracking "within a stream of digital images."  Samsung's additional "frame to frame" language is at best redundant; Samsung seeks to add this limitation to support a non-infringement argument that tracking must occur in every frame without skipping.  But the intrinsic record shows that tracking may skip frames.  Op. Br. at 5-6.  Samsung points to some embodiments that in its view do not skip frames, but preferred embodiments cannot limit the invention – particularly when other embodiments skip frames.  *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012).  Second, Samsung fails to show that tracking must be of a "location."  Samsung cites nothing in the claim language supporting its addition of the "location" limitation.  Nor does it point to any definition or disavowal in the intrinsic record.  Contrary to Samsung's arguments, the '897 specification discloses tracking – not just detecting – regions by "determin[ing] their likely location(s) and/or size(s) in the next frame."  '897 patent at 19:57-64; *see also id.* at 27:9-10.

---

[1] Samsung argues that FotoNation's construction's recitation of "a region of interest" and "images in a stream" is improper in terms that do not already recite "a region of interest" or "a stream." Op. Br. at 4.  Samsung cites no legal support for this argument, and there is none.  FotoNation's construction is proper because it explains in generic terms what "tracking" is and allows other limitations to provide additional specificity (for example, that the "region of interest" is a "face").

**B.** **"main acquired image[s]" ('218: Cl. 14; '897: Cl. 1, 4, 5, 14) / "main target image" ('897: Cl. 5) (Op. Br. at 7)**

FotoNation's construction describes these terms in plain English as the "main captured image." Op. Br. at 7. Samsung argues that FotoNation's construction changes the terms' meaning. Samsung relies primarily on a reference to a term including "acquired" in the **_unrelated_** '016 patent. Resp. Br. at 6 (citing '016 patent at 7:44-48). The patents at issue – the '218 and '897 – do **_not_** include this reference. Samsung also cites the '897 specification to attempt to differentiate "acquired" and "captured." _Id._ (citing '897 Patent at 10:28-33). This portion of the specification, however, uses "capture" and "acquisition" interchangeably to explain that image "capture" occurs through the "image acquisition chain." '897 patent at 10:28-33. Neither citation mentions "target" or has any bearing on the term "main target image." Samsung's criticisms of FotoNation's construction thus fail. Samsung's construction improperly adds limitations requiring a "full size image" acquired "by the digital image acquisition device." Samsung's passing references to these concepts in the intrinsic record, Resp. Br. at 6, do not amount to either lexicography or disclaimer.

**C.** **"preview image stream" ('897: Cl. 1, 5) (Op. Br. at 8)**

The intrinsic record does not depart from this term's plain meaning. _See_ Op. Br. at 8-9. FotoNation's opening brief explains that Samsung would import a host of extraneous limitations into the term. Samsung attempts to justify this in two erroneous ways. First, Samsung misrepresents that FotoNation "agrees that a 'preview image stream' is a stream of images 'prior to capturing the full resolution main image.'" Resp. Br. at 8 (purporting to quote Op. Br. at 8) (emph. omitted). FotoNation's brief contains no such language, and disagrees that the main image must be "full resolution." _See_ Op. Br. at 7. Second, Samsung seeks to import limitations – such as "subsampled" – from the specification's passing descriptions of certain embodiments. Resp. Br. at 7 (citing '897 patent at 7:60-63, 14:27-28). But the specification contains descriptions of

2

"preview image stream" that do not mention "subsampled." *E.g.*, '897 patent at 3:20-22, 18:26-33, 19:18-25. These non-definitional descriptions do not justify departing from the plain meaning.

**D.    "applying different subsets of face detection windows to different subsets of the integral images" ('897: Cl. 5) (Op. Br. at 9)**

Samsung agrees with the "sizes" language in FotoNation's construction, admitting the "invention scans different **subsets (i.e., different sizes)** of the face detection windows." Resp. Br. at 9 (emph. added).  The Court should grant that undisputed portion of FotoNation's construction.

Samsung's dispute regarding the "locations" portion of FotoNation's construction attacks a straw man. FotoNation's construction does not narrowly "require . . . applying different face detection windows to different *locations* within a *single* integral image." Resp. Br. at 8 (emph. by Samsung).  It merely explains that a "subset" of an image is a "location" within the image. Samsung's arguments against FotoNation's construction therefore address an issue not raised by FotoNation's construction.   Resp. Br. at 8-11.[2]   Conversely, Samsung's construction does improperly narrow the term, excluding embodiments where the windows *are* applied to a single integral image.  Op. Br. at 10.  Samsung argues that the claim language supports this limitation, but points only to language requiring that the tracking involve multiple images in a stream – a proposition not in dispute.  Resp. Br. at 10.  Samsung does not attempt to argue lexicography or disclaimer.  Its narrowing construction thus fails as a matter of law.

**E.    "analyzing one or more characteristics of said region of said third preview image" ('897: Cl. 14) (Op. Br. at 11)**

An ordinary artisan would have understood that "said region of said third preview image"

---

[2] Samsung also argues that this particular limitation must be read to distinguish from a method allegedly disclosed in a prior art reference.  Resp. Br. at 8.  But this claim has a variety of other differences from that reference, which does not disclose elements such as "tracking" or an "image stream."  There is no reason to import into this element an unnecessary additional distinction.

relies for its antecedent basis on "a region of a further preview image." Op. Br. at 11-12. Samsung attempts to meet its high burden to show the term's alleged indefiniteness by pointing to an alternate antecedent basis: "tracking each of the different candidate face regions within further images of the image stream or a main target image with which said preview image stream is utilized, or both." '897 patent at claim 5. An ordinary artisan would not consider this a potential antecedent basis: "tracking . . . [the] regions . . . within further images . . . or a main target image" refers to the action of tracking, and "said region of said third preview image" refers to a region in an image. Only "a region of a further preview image" similarly refers to a region in an image. Samsung mischaracterizes the case law it cites – that court noted that it would find a claim *definite* even though it did not distinguish between two potential antecedent bases, only holding it indefinite because of a conflicting dependent claim not present here. Resp. Br. at 12 (citing *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 WL 4352489, at *5-6 (E.D. Tex. Sept. 2, 2014); *see also Intellectual Ventures II LLC v. BITCO Gen. Ins. Corp.*, No. 6:15-cv-59, 2016 WL 125594, at *16 (E.D. Tex. Jan. 11, 2016). Turning to the specification, the patentee's interchangeable use of "third" and "further" strongly supports FotoNation's antecedent basis. Op. Br. at 11-12. Samsung fails to address the specification.

### F.    "concentrated face detection" ('218: Cl. 1) (Op. Br. at 12)

Samsung fails to prove this term indefinite. Samsung contends that as a matter of law, a term is indefinite when the specification uses it only in the "summary of the invention" and when it "is not a well-understood term of art." Resp. Br. at 12-13 (citing *Union Pac. Res. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001)) (emph. omitted). But it misrepresents the pre-*Phillips*, pre-*Nautilus* opinion it cites. That opinion states that when the specification is insolubly ambiguous whether a term takes its plain and ordinary meaning or a conflicting technical meaning, the term is indefinite. *Union Pac. Res.*, 236 F.3d at 692; *see also Orion IP, LLC v. Mercedes-Benz*

*USA, LLC*, 516 F. Supp. 2d 720, 738 (E.D. Tex. 2007). Here there is no conflicting technical meaning, and the plain-English meaning is definite. Additionally, Samsung leaves unrebutted that its alternative construction further proves this term definite. *See* Op. Br. at 12-13.

Samsung's alternative construction fails because it improperly adds requirements that face detection be concentrated entirely on a "patch" that is "extracted" from the image. Samsung cites no lexicography or disclaimer in the specification. Samsung's construction would also exclude an embodiment where "face detection" concentrates on a "patch" that is ***not*** extracted. Op. Br. at 13. Samsung's sole counter is that "FotoNation's reference to 'image patches' is unrelated to anything argued to by either side to be concentrated face detection." Resp. Br. at 14. This is incorrect: FotoNation's opening brief cites this as an example of concentrated face detection, Op. Br. at 13, and the specification explains that a more thorough "face detector is applied to each such image patch," '218 patent at 11:37-43, a process of concentrating face detection on an area.

### G. "an image stream of … reference images" ('218: Cl. 1, 26) / "a reference image stream" ('218: Cl. 1, 26) (Op. Br. at 13)

These terms require no construction. *See* Op. Br. at 13-14. Samsung's construction erroneously incorporates the specification's description of the usefulness of a reference image stream (it provides visual information). *See* Op. Br. at 14. Samsung argues this incorporation is proper because the specification uses the term "so-defined." Resp. Br. at 14-15. But "so-defined" refers to the sentence that precedes it, which generally explains that "[t]he reference image can be a single instance, or in general, a collection of one or more images varying from each other" – not to the earlier sentence Samsung contends it does. Samsung also reads improper, narrow limitations into the word "stream." *See supra* Section C; Op. Br. at 8-9.

Should the Court desire to construe these terms (which it need not), it should use the straightforward, easily understandable construction "preview image stream." Op. Br. at 13-14.

5

Samsung's arguments against this alternative construction fail.  Samsung argues that a reference image stream cannot *be* a preview image stream because according to the specification "the reference image stream 'may *include* preview video.'"  Resp. Br. at 16 (quoting '218 patent at 6:3-12, emph. by Samsung).  But this mischaracterizes the specification, which actually states that "*[e]xamples* [of a reference image stream] may include preview video."  '218 patent at 6:3-12 (emph. added).  Samsung argues that FotoNation's construction would exclude embodiments but fails to point to any excluded embodiment.  Resp. Br. at 16 (citing '218 patent at 5:61-7:25).  It cannot, because each involves a preview image stream.  Samsung also attempts a claim-differentiation argument, reading an unnatural meaning into the independent claim merely to differentiate it from an unasserted dependent claim explicitly claiming a "preview image stream."  This argument erroneously lets "the dependent claim tail wag the independent claim dog." *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1323 (Fed. Cir. 2016).

**H.    "focus position of the region of interest" ('715: Cl. 1) (Op. Br. at 14)**

Samsung contends there is no single construction of "focus position," *alone*, in claim 1 of the '715 patent to make the claim "self-consistent."  Resp. Br. at 16.  This does not render the claim indefinite when the appropriate meaning of the term is readily apparent from each occurrence *in context*, and a uniform reading would result in a "nonsensical reading." *Aventis Pharm. Inc. v. Amino Chems. Ltd.,* 715 F.3d 1363, 1373-74 (Fed. Cir. 2013) (rejecting district court's "one-size-fits-all" construction of the term "substantially pure") (citation omitted).  Samsung itself admits this is true here:  "automatically adjusting *focus position*" refers to a "parameter that the system can automatically adjust," and the "*focus position* of the region of interest" refers to a property "that the system detects *has changed*."  Resp. Br. at 16 (emph. by Samsung).  FotoNation's construction clarifies the "property" that has changed is the position of the lens stage that brings the region of interest in focus.  Samsung does not dispute this or offer an alternative.

6

**I.**    **"acquiring a temporally sequential collection of two or more images of substantially a same scene" ('016: Cl. 1) (Op. Br. at 17)**

After Samsung dropped its indefiniteness contention and agreed to shorten the term for construction, the parties' sole remaining dispute is whether Samsung properly imports a purported definition. Samsung represents that "the '016 Patent expressly defines an 'acquired' image as 'an image that is digitally recorded in a permanent file and/or preserved in a more or less permanent digital form.'" Resp. Br. at 17 (emph. omitted). This is inaccurate. The specification makes no express definition, instead using the open language "*includes*" to introduce the phrase Samsung incorporates in its construction. (emph. added). And the language in question is not the term "acquired," but rather the term "Digitally-Acquired Image," which does not appear in the claim. Because Samsung's sole argument depends on a misrepresentation of the specification, the Court must reject Samsung's construction. The claim language also describes that some form of a "main acquired image" *may* be stored but imposes no requirement that the main acquired image *must* be stored, further proving Samsung's construction wrong. Op. Br. at 18.

**J.**    **"determining default values of one or more parameters" ('274: Cl. 1, 5, 9; '016: Cl. 1) (Op. Br. at 18)**

Samsung does not dispute that FotoNation's construction applies the specification's consistent description of "default values." *See* Op. Br. 18-20. Instead, Samsung argues that FotoNation's construction conflicts with the surrounding claim language "based on the collection of images." Resp. Br. at 19. This argument (1) ignores dispositive evidence in the specification and prosecution history and (2) reinforces that this claim language needs construction because when read without the benefit of the specification it is susceptible to multiple interpretations. But more importantly, this argument is wrong. In order to load the correct "default values" explained in the specification, the invention must perform an analysis "based on the collection of images" to determine that they contain a face and/or which type of face they contain. *See* Op. Br. at 19-20;

7

*see also* ’016 patent at 18:21-23, 9:38-39. Samsung’s arguments to distinguish the ’076 Patent’s prosecution history also fail. Different claim language can be construed to cover the same subject matter. *See Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1330 (Fed. Cir. 2009). Here, the prosecution statements in the ’076 are consistent with the shared specification and FotoNation’s construction. *See id.;* Op. Br. at 20.

**K. “[selectively applying/applying] fill flash” (’274: Cl. 1, 5, 9; ’932: 2, 3, 8, 9, 14, 15) / “automatically providing a fill flash” (’274: Cl. 1, 5, 9) (Op. Br. at 21)**

Samsung cannot rely on the illustrative definition for “fill flash” in the specification – which plainly refers to the prior art non-digital “fill flash” using, e.g., a flash bulb – for the claimed “fill flash.” Lexicography does not apply when a purported definition in the written description would exclude examples of that term used in the specification and when it is inconsistent with other claim terms. *Abbott Labs. v. Andrx Pharm., Inc.*, 473 F.3d 1196, 1210 (Fed. Cir. 2007) (finding district court erred in concluding that claimed “pharmaceutically acceptable polymer” was limited to express definition: polymer is a water-soluble hydrophilic polymer…”). Here, the illustrative definition excludes the digital simulation of a fill flash in the specification (i.e., modifying pixels within an image to simulate the effect of a fill-flash). *See, e.g.,* ’274 patent at 9:26-36; 17:50-51; 29:56-30:34. It also conflicts with claim language expressly directing the claim to this “digital” simulation. Op. Br. at 22.

Samsung also introduces two examples “in the abstract” on how “one might argue” the term “automatically” could be understood in the context of a camera flash unit (e.g., an external light source). Resp. Br. at 21-22. These examples, like Samsung’s ***78 word*** construction for “automatically providing,” are manufactured by Samsung and do nothing but inject confusion where none exists. No construction is necessary for “automatically.” Op. Br. at 23.

**L. “collection of low resolution images” (’274: Cl. 1, 5, 9) (Op. Br. at 24)**

Samsung admits that the phrase "lower resolution" used in the claims of the related '016 patent is not an indefinite term of degree because it includes a "point of reference," i.e. "lower resolution than the full resolution of the image sensor." Resp. Br. at 23-24. An ordinary artisan would likewise understand the term "low resolution image" in light of the specification this patent shares with the '016 patent to include a similar "full resolution image" point of reference. Op. Br. at 24. By Samsung's own logic, the term "low resolution image" is therefore not indefinite. Samsung disagrees, based on an incorrect assumption that the different terms used in the separate claims must be construed to cover different subject matter. Resp. Br. at 23-24; *Edwards*, 582 F.3d at 1330 (different terms can have same meaning). Indeed, Samsung points to no evidence from the intrinsic record that supports its assumption. Samsung also wrongly argues that this objective comparison between low resolution images and the full resolution images is somehow based on the "premise[]… that tracking cannot be performed in the full resolution main acquired images." Resp. Br. at 24; *see* Turk Decl. at ¶ 49 (tracking only "generally uses" low resolution images).

Samsung's proposed construction further counts against its indefiniteness contention. *See BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1368 (Fed. Cir. 2017). It is also incorrect because it introduces a "temporally sequential" limitation that is not found anywhere in the intrinsic record, as demonstrated by Samsung's lack of support in its responsive brief.[3]

### M. "analyze one or more partial face regions" / "partial face region" ('674: Cl. 29) (Op. Br. at 27)

Samsung concedes that it intends to improperly interpret this term to encompass ***admitted***

[3] Samsung's reliance on the out-of-district *Arctic Cat* case is misplaced. Resp. Br. at 23. That case dealt with a literal term of degree (temperature), whereas the term "low resolution images" is relative to the full resolution image and not indefinite. *See Saint Lawrence Commc'ns LLC v. Apple. Inc.*, No. 2:16-CV-82, Dkt. 170 (E.D. Tex., July, 5 2017) (finding that "the word 'low' does not give rise to indefiniteness").

*prior art* full face detectors described in the specification.  Resp. Br. at 27-28.  Samsung contends that prior art detectors searched images for full faces, but could, "inherently" detect a partially occluded face as a "full face."  Resp. Br. at 27-28.  FotoNation disagrees with this contention, but more importantly these prior art references did not detect partial faces *specifically*, as required by the disclosed invention, and as made clear by FotoNation's construction.  Op. Br. at 27-28.  The specification distinguishes the "resource intensive[ness]" of "search[ing] for full faces in digital images."  '674 patent at 22:37-38.  Even if the specification were not already clear that partial face *detection* is required as part of the "analysis" step, *see* Op. Br. at 27-28,[4] FotoNation's construction should be adopted because any ambiguity in the claim language "should be resolved in a manner that would preserve the patent's validity."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005).  Samsung's additional dispute on "generally frontal facing" is a red herring.  *See* Resp. Br. at 28; Stevenson Dec. at ¶¶ 103-104.  Samsung's example falls within FotoNation's construction, which distinguishes faces in profile.  Op. Br. at 27-28.

N.    **"recognize one or more faces or types of faces, or both, within the first image" ('674: Cl. 40) (Op. Br. at 29)**

Samsung does not dispute that its construction improperly imports limitations from the preferred embodiments, and the Court should therefore reject it.  *See* Op. Br. at 29.  Nor is FotoNation trying to read this term "synonymous with 'face detection.'" Resp. Br. at 29-30.  As Samsung admits, face detection corresponds to detecting *any* face, whereas recognizing "refers to identifying a particular face or type of face."  Resp. Br. at 30.  This is already plain in the express claim language, and therefore no construction is necessary.

---

[4] Samsung claims that "the undisputed plain meaning of 'analyze' does not require 'detection.'" Resp. Br. at 26.  Samsung is wrong; its contention is based entirely on a non-technical dictionary definition of "analyze" that ignores the use of the term in the context of the '674 patent.  *Id.* at 26 (citing Ex. 9 Cambridge Dictionary of American English); *see* Op. Br. at 27-28.

### O.  "… one mechanical resonance frequency" ('829: Cl. 1, 11) (Op. Br. at 31)

The main dispute between the parties is the construction of "resonant frequency."  Samsung argues FotoNation's construction merely replaces one scientific term with another and improperly uses "natural frequency."  Resp. Br. at 31-32.  Samsung is wrong.  First, FotoNation's construction explains what happens at a "resonant frequency" – an object naturally vibrates.  It is these vibrations that the '829 patent seeks to address.  Second, FotoNation's use of "natural frequency" is consistent with the intrinsic evidence.  The '829 patent identifies "resonant frequency" as the natural frequency of the moveable portion.  Op. Br. Ex. 14 at Fig. 2, '829 patent at 9:38-39, Fig. 10; Op. Br. Ex. 15 at [0005].  It also separately identifies the natural "resonant frequency" and "damping coefficient/constant."  Op. Br. Ex. 14 at p. 4 and 6; '829 patent at 9:38-48, 10:9-15, Fig. 10.  Indeed, the damping constant ***may be*** used – it is not required as Samsung suggests.  '829 patent at 9:46-48.  Nor does FotoNation ignore that real-life systems may have some damping.  Resp. Br. at 31.  Damping in such cases may be between 0.01 to 0.05. Op. Br. Ex. 14 at 2. As acknowledged by Samsung, small damping values like these minimally affect the resonant frequency value.  Trumper Decl. at ¶ 41; Resp. Br. Ex. 14 at 569, Fig. 9.2.4(a) at 0.01 and 0.1.

Samsung's extrinsic-evidence based construction should be rejected.  Resp. Br. at 31.  Although Samsung cites the specification describing oscillations as "significant," these oscillations occur after applying a "step-function stimulus" – not a "small driving force."  '829 patent at 4:26-30.  Indeed, there is no statement in the specification about the level of driving force.

### P.  "substantially zero" ('829: Cl. 11) (Op. Br. at 32)

Samsung argues "substantially zero" is indefinite because the specification does not disclose a numerical range for the requisite level of damping.  Resp. Br. at 33.  Samsung ignores that numerical precision is not required.  Here, a person of skill can ascertain the objective bounds based on the term's function: reducing energy at the resonant frequency so ringing caused by this

frequency is sufficiently suppressed for the particular miniature camera, improving focus/zoom performance. Op. Br. at 32-34. And while attenuation may vary between designs, the underlying requirement that the resonant frequency not impair the camera's focus/zoom remains the same. *Id.* Samsung also suggests that courts evaluate words of approximation modifying a numerical value under a different indefiniteness standard. Resp. Br. at 33. None of the cited cases stand for that proposition. A court in this district even disagreed with *Hamilton Prod. v. O'Neill*, 492 F. Supp. 2d 1328, 1337-41 (M.D. Fla. 2007), concluding the term "approximately" was not indefinite. *Imperium (IP) Holdings, Inc. v. Apple, Inc.*, 920 F. Supp. 747, 762-63 (E.D. Tex. 2013).

Samsung erroneously argues that FotoNation's proposed construction is improper because it uses terms not found in the specification and includes terms of approximation. Resp. Br. at 33-34. First, there is no requirement the exact construction be found in the specification. Second, a person of skill would understand the bounds of FotoNation's construction. *See* Op. Br. at 32-34.

### Q.    "generating a waveform…" ('829: Cl. 1) (Op. Br. at 34)

Samsung argues "not including" means no frequency component is present. Resp. Br. at 34-35. This ignores the intrinsic record. The '829 patent discloses ***filtering*** a signal – either through pulse shaping or low-pass filtering – to reduce energy at the resonant frequency. Op. Br. at 34-35. Such filtering cannot completely remove the presence of a frequency component, only reduce its energy. *Id.* This is even shown in the embodiment cited by Samsung as supposedly supporting its construction (Trumper Decl. at ¶ 71) – while pulse shaping creates valleys at frequencies, some energy is still present. Op. Br. at 35. As the intrinsic record does not show the complete removal of frequency components, the construction must be rejected. *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1291 (Fed. Cir. 2009). And as the '829 patent equates "substantially zero" and "does not include," the arguments in Section P. apply equally here. Op. Br. at 34-35.

12

Dated: September 6, 2018          */s/ Julie M. Holloway*

Matthew J. Moore
matthew.moore@lw.com
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW Suite 1000
Washington, DC 20004-1304
Tel: 202-637-2200
Fax: 202-637-2201

Julie M. Holloway (pro hac vice)
julie.holloway@lw.com
Kyle A. Virgien
kyle.virgien@lw.com
Blake Richard Davis
blake.davis@lw.com
Allison K Harms (pro hac vice)
allison.harms@lw.com
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San, Francisco, CA 94111-2562
Tel: 415-391-0600
Fax: 415-395-8095

David K. Callahan
david.callahan@lw.com
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: 312-876-7700
Fax: 312-993-9767

T. John Ward
State Bar No. 20848000
tjw@wsfirm.com
Claire Abernathy Henry
State Bar No. 24053063
claire@wsfirm.com
Andrea L. Fair
State Bar No. 24078488
andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
Tel: 903-757-6400
Fax: 903-757-2323

13

*Attorneys for Plaintiffs FotoNation Limited and DigitalOptics Corp. MEMS*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail on September 6, 2018.

<u>*/s/ Linda Smith*</u>
Linda Smith