# EXHIBIT 6

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| CLAIM 1 | |
| [1a] A method comprising: receiving information indicative of a target position of a portion of a stage system included in a miniature camera, the target position being different than a current position of the portion of the stage system and included in a range extending from a minimum position to a maximum position, and | This reference discloses receiving information indicative of a target position of a portion of a stage system included in a miniature camera, the target position being different than a current position of the portion of the stage system and included in a range extending from a minimum position to a maximum position.<br><br>Kovinskaya at [0016]:<br>"The normalized control profiles are preferably used to control the displacement of the control object by identifying a number of resonant frequencies of the control object, and evaluating the excitation energy of each of the number of resonant frequencies for a Sequence of different Seek operations carried out using the normalized Series of control profiles and having different elapsed time durations.  A time Scale value is Selected as a time at which a combination of the excitation energies of each of the number of resonant frequencies is below a Selected threshold, and a Seek operation is performed to move the control object from the initial position to the target position So that the elapsed time during the Seek operation is nominally equal to the time Scale value."<br><br>Kovinskaya, Fig. 2:<br><br>Kovinskaya, Claim 6:<br>"6.  The method of claim 1, wherein the displacing Step comprises: |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | identifying a number of resonant frequencies of the control object; |
| | evaluating excitation energy of each of the number of resonant frequencies for a Sequence of different Seek operations carried out using the normalized Series of control profiles and having different elapsed time durations, |
| | selecting a time Scale value as a time at which a combination of the excitation energies of each of the number of resonant frequencies is below a Selected threshold; and |
| | performing the Seek operation to move the control object from the initial position to the target position So that the elapsed time during the Seek operation is nominally equal to the time Scale value." |
| | Kovinskaya at [0031]-[0032]: "FIG. 2 provides a functional block diagram of a servo control circuit 120 of the disc drive 100. Servo data written to the disc surfaces are transduced by the selected head 112 and provided to a preamplifier/driver circuit (preamp) 122 for preamplification and filtering. The filtered servo signals are provided to demodulation circuitry (demod) 124 which applies additional conditioning to the signals, including conversion to digital form. The digital servo signals are then passed to a programmable processor 126, in this case a digital signal processor (DSP) having associated memory 128. |
| | [0032] The DSP 126 generates an appropriate command signal to adjust the position of the selected head 112 in accordance with the detected position of the head from the servo data as well as commands received from a top level processor (not shown). The DSP 126 provides this command signal to coil driver circuitry 130 which in turn applies current to the actuator coil 114 to move the head 112 as desired." |
| | Kovinskaya, Fig. 2: |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | <br><br>Kovinskaya at [0033]:<br>"FIG. 3 provides a generalized family of profiles to describe the operation of the servo control circuit 120 during a seek operation in which the selected head 112 is moved from an initial track to a destination (target) track. The profiles are plotted against a common x-axis 132 indicative of elapsed time and a common amplitude y-axis 134. The seek occurs over a duration of time 0 to time t0."<br><br>Kovinskaya at [0071]-[0072]:<br>"A table of profiles can now be constructed for a class of seeks of incrementally larger displacement and all having durations near tS. In a preferred embodiment, the profiles are characterized as control voltage profiles which are used to control the output of the control voltage U(t) during subsequent seeks. In another preferred embodiment, the profiles are characterized as velocity profiles which are then used in closed loop fashion during subsequent seeks (i.e., the velocity of the head is repetitively measured and the source voltage is adjusted in relation to velocity error to cause the head to follow the velocity profile to the target track). Simulations are preferably performed in an iterative fashion to arrive at optimal control profiles for each seek displacement length.<br><br>With reference again to FIG. 8, it will be noted that the seek time tS identified by the first minimum of the An energy curves 206, 208, 210 will likely only accommodate a number of all desired seek displacement lengths. That is, while a number of seeks can be carried |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | out within the allotted time of tS, there will be upper limits on the amount of current that can be supplied to the VCM as well as a maximum safe velocity that can be achieved during the seek.  Under these constraints, the time tS simply does not provide enough time to move the head to all possible target tracks."<br><br>Kovinskaya at [0076]:<br>"Grouping the seeks about these time scale values will result in minimal excitation of the selected resonances of interest, leading to improved settling performance once the target track is reached, as indicated by FIG. 10.  Curve 236 generally represents a typical trajectory of a head using advanced prior art control techniques as the head settles onto a destination position 0.  Curve 238 generally represents a typical trajectory of a head using the methodology presented above."<br><br>Kovinskaya at [0089]:<br>"The normalized control profiles are preferably used to control the displacement of the control object by identifying a number of resonant frequencies of the control object, and evaluating the excitation energy of each of the number of resonant frequencies for a sequence of different seek operations carried out using the normalized series of control profiles and having different elapsed time durations (such as by step 308).  A time scale value is selected as a time at which a combination of the excitation energies of each of the number of resonant frequencies is below a selected threshold (such as 217), and a seek operation is performed to move the control object from the initial position to the target position so that the elapsed time during the seek operation is nominally equal to the time scale value (such as by step 310)."<br><br>Kovinskaya, Fig. 3: |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | <br><br>Kovinskaya, Fig. 4: |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Kovinskaya, Fig. 5:<br><br><br><br>Kovinskaya, Fig. 6:<br><br>Kovinskaya, Fig. 7: |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | <br>Kovinskaya, Fig. 8: |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| |  |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Kovinskaya, Fig. 11:<br><br><br><br>*See also related disclosure of Figs. 2-11 of Kovinskaya* (e.g., at [0031]-[0091]).<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [1b] wherein the stage system has at least one mechanical resonance frequency; | This reference discloses that the stage system has at least one mechanical resonance frequency.<br><br>*See exemplary disclosures cited above for Claim 1[a].*<br><br>Kovinskaya at Abstract:<br>"A method for positioning a control object using an optimum jerk profile to reduce excitation of mechanical resonances. A base set of control profiles is selected to describe jerk, acceleration, velocity and displacement of the control object during a seek. Notch functions are applied to the base jerk profile to provide a modified jerk profile having a value of zero at selected times during which maximum current is to be applied to move the control object. Normalized control profiles describing acceleration, velocity and displacement are generated from the modified jerk profile and thereafter used to move the control object. To suppress specific resonant frequencies of interest, the elapsed time of the seek is selected to coincide with a time at which a combination of the excitation energies associated with the resonant frequencies is at a minimum."<br><br>Kovinskaya, Fig. 11: |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| |  Kovinskaya at [0002]: "The claimed invention relates generally to the positioning of control objects, and more particularly, but not by way of limitation, to a disc drive servo control system that moves a data transducing head adjacent a data recording surface in relation to an optimized jerk profile to reduce excitation of mechanical resonances in an actuator structure used to support the head." |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | <u>Kovinskaya at [0006]:</u><br>"Since user data are only typically transferred to the host device during track following modes of operation, efforts are made by disc drive designers to minimize the time required to carry out seek operations in order to maximize overall data transfer performance. Actuators are typically abruptly accelerated and decelerated to bring the head into alignment with the destination track in as short a time as practical. However, such abrupt forces upon the actuator can excite resonances of the mechanical actuator system, causing the head to oscillate (ring) upon arrival to the destination track. Such oscillations can significantly lengthen the time required to complete the seek and transition to the track following mode."<br><br>*See also Kovinskaya* at [0003]-[0005], [0007]-[0009], [0016], [0025], [0065]-[0089], Claims 1, 6, 9, 12.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [1c] generating a waveform configured to move the portion to the target position, the waveform not including the at least one mechanical resonance frequency; | This reference discloses generating a waveform configured to move the portion to the target position, the waveform not including the at least one mechanical resonance frequency.<br><br>*See exemplary disclosures cited for Claim 1[a], [b].* |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Kovinskaya, Fig. 2:  Kovinskaya at [0002]: "The claimed invention relates generally to the positioning of control objects, and more particularly, but not by way of limitation, to a disc drive servo control system that moves a data transducing head adjacent a data recording surface in relation to an optimized jerk profile to reduce excitation of mechanical resonances in an actuator structure used to support the head." Kovinskaya at [0006]-[0007]: "Since user data are only typically transferred to the host device during track following modes of operation, efforts are made by disc drive designers to minimize the time required to carry out seek operations in order to maximize overall data transfer performance.  Actuators are typically abruptly accelerated and decelerated to bring the head into alignment with the destination track in as short a time as practical.  However, such abrupt forces upon the actuator can excite resonances of the mechanical actuator system, causing the head to oscillate (ring) upon arrival to the destination track.  Such oscillations can significantly lengthen the time required to complete the seek and transition to the track following mode. Designers have employed various techniques to select trajectory control profiles (velocity, current, etc.) having shapes that reduce the excitation of such resonances.  One approach discussed by Mizoshita et al. in a paper entitled "Vibration Minimized Access |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Control for Disk Drives," IEEE Transactions on Magnetics, Vol. 32, No. 3, May 1996, uses a minimum-jerk cost function to develop a closed-loop velocity profile to move a disc drive actuator arm.  As will be recognized, jerk is defined as change in acceleration (force) with respect to time."<br><br>Kovinskaya at [0009]:<br>"Mizoshita's cost function is expressed in terms of the integral of the square of the jerk profile values, and thus attempts to minimize the area of the jerk profile.  While this tends to reduce excitation of all mechanical resonances of the system across the board, there is no provision to further address and suppress the excitation of specific resonant frequencies of the mechanical system identified as potentially having an adverse effect upon the operation of the servo system.  Thus, even using Mizoshita's jerk profile such resonances can still be excited during a seek, increasing the time required to complete the settling of the head onto the destination track."<br><br>Kovinskaya at [0012]:<br>"In accordance with preferred embodiments, a base series of control profiles is selected to describe jerk, acceleration, velocity and displacement of the control object from an initial position to a final position along an initial trajectory path.  The base control profiles include a continuous base jerk profile configured to suppress excitation of mechanical resonances in the control object through selection of minimum peak values in the profile."<br><br>Kovinskaya at [0016]:<br>"The normalized control profiles are preferably used to control the displacement of the control object by identifying a number of resonant frequencies of the control object, and evaluating the excitation energy of each of the number of resonant frequencies for a sequence of different seek operations carried out using the normalized series of control profiles and having different elapsed time durations.  A time scale value is selected as a time at which a combination of the excitation energies of each of the number of resonant frequencies is below a selected threshold, and a seek operation is performed to move the |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | control object from the initial position to the target position so that the elapsed time during the seek operation is nominally equal to the time scale value."<br><br>Kovinskaya at [0081]-[0082]:<br>"Step 308 involves identifying and evaluating selected resonant frequencies of interest and selecting a number of time scales for the control profiles of step 306. This preferably involves calculating energy functions as set forth by equation (18) for each of the frequencies and plotting the results as shown in FIG. 8 for graphical determination of the respective minimum points; alternatively, the energy functions can be summed using suitable computational software to calculate the minimum points.<br><br>Once the time scale values are selected, the routine continues to step 310 where a table of profiles is generated for each grouping of seeks having nominally the same time scale duration and different displacement lengths (as shown by FIG. 9). Thereafter, during normal operation the table of profiles is used to identify and apply the appropriate set of control profiles to move the selected head 114 the desired seek displacement distance, step 312. The routine then ends at 314."<br><br>*See also Kovinskaya* at [0003]-[0015] and Figs. 3-11 and related disclosure (e.g., [0025], [0031]-[0032], [0065]-[0089]); *see also* Claims 1, 6, 9, 12.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | |
| [1d] wherein the information indicative of the target position is indicative of a desired zoom or focus of the miniature camera. | *See exemplary disclosures cited for Claim 1[a]-[c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 2 | |
| 2. The method of claim 1, further comprising transmitting the waveform to an actuator. | This reference discloses transmitting the waveform to an actuator.<br><br>*See exemplary disclosures cited above for Claim 1[a]-[c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| CLAIM 3 | |
| 3. The method of claim 2, further comprising moving the portion of the stage system to the target position using the actuator with substantially no oscillation of the portion of the stage system about the target position. | This reference discloses moving the portion of the stage system to the target position using the actuator with substantially no oscillation of the portion of the stage system about the target position.<br><br>*See exemplary disclosures cited above for Claim 1[a]-[c].*<br><br>Kovinskaya at [0006]-[0010]:<br>"Since user data are only typically transferred to the host device during track following modes of operation, efforts are made by disc drive designers to minimize the time required to carry out seek operations in order to maximize overall data transfer performance. Actuators are typically abruptly accelerated and decelerated to bring the head into alignment with the destination track in as short a time as practical. However, such abrupt forces upon the actuator can excite resonances of the mechanical actuator system, causing the head to oscillate (ring) upon arrival to the destination track. Such oscillations can significantly lengthen the time required to complete the seek and transition to the track following mode.<br><br>Designers have employed various techniques to select trajectory control profiles (velocity, current, etc.) having shapes that reduce the excitation of such resonances. One approach discussed by Mizoshita et al. in a paper entitled "Vibration Minimized Access Control for Disk Drives," IEEE Transactions on Magnetics, Vol. 32, No. 3, May 1996, uses a minimum-jerk cost function to develop a closed-loop velocity profile to move a disc drive actuator arm. As will be recognized, jerk is defined as change in acceleration (force) with respect to time.<br><br>While operable, the system of Mizoshita has certain drawbacks, including inadequate compensation for certain real world effects such as coil inductance and back electromagnetic force (bemf) in the actuator coil. These factors mitigate against using the derived profiles in an open loop fashion; applying current from a voltage source in accordance with the derived current profile would not likely provide the necessary |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | current within the coil to achieve the desired final states for the seek (correct final position, velocity and acceleration of zero, etc.). Using this methodology in a closed-loop fashion may also result in less than optimum performance; applying whatever current is necessary to cause the head to follow the derived velocity profile might provide different jerk characteristics than those predicted by the model due to the effects of bemf and coil inductance.<br><br>Mizoshita's cost function is expressed in terms of the integral of the square of the jerk profile values, and thus attempts to minimize the area of the jerk profile. While this tends to reduce excitation of all mechanical resonances of the system across the board, there is no provision to further address and suppress the excitation of specific resonant frequencies of the mechanical system identified as potentially having an adverse effect upon the operation of the servo system. Thus, even using Mizoshita's jerk profile such resonances can still be excited during a seek, increasing the time required to complete the settling of the head onto the destination track.<br><br>Accordingly, there is a continued need for improvements in the art to provide control profiles to facilitate positional control of a control object such as a disc drive actuator. It is to such improvements that the claimed invention is directed."<br><br>Kovinskaya at [0077]:<br>"From FIG. 10 it can be seen that significant improvements in settling performance are achieved using the disclosed methodology. The small amplitude oscillations present in curve 238 were determined to be due to uncontrollable windage effects (turbulence) in the airflow impinging the head. Thus, when properly configured the disclosed methodology provides substantially optimum settle performance and substantially no excitation of resonances within the mechanical actuator system."<br><br>Kovinskaya, Fig. 10: |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  |  To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 4** |  |
| 4.  The method of claim 1, wherein the information indicative of the target position is indicative of a desired zoom of the miniature camera. | *See exemplary disclosures cited above for Claim 1[a]-[c].* To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 5** |  |
| 5.  The method of claim 1, wherein the information indicative of the target position is indicative of a focus position of a lens included in the miniature camera. | *See exemplary disclosures cited above for Claim 1[a]-[c]*.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 6** |  |
| 6.  The method of claim 1, wherein generating the waveform comprises generating a waveform including one or more waveform segments each having an associated duration, and wherein the associated durations are selected so the one or more frequency components do not include the at least one mechanical resonance frequency. | This reference discloses generating the waveform comprises generating a waveform including one or more waveform segments each having an associated duration, and wherein the associated durations are selected so the one or more frequency components do not include the at least one mechanical resonance frequency.<br><br>*See exemplary disclosures cited above for Claim 1[c]*.<br><br>Kovinskaya at [0081]-[0082]:<br>"Step 308 involves identifying and evaluating selected resonant frequencies of interest and selecting a number of time scales for the control profiles of step 306.  This preferably involves calculating energy functions as set forth by equation (18) for each of the |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | frequencies and plotting the results as shown in FIG. 8 for graphical determination of the respective minimum points; alternatively, the energy functions can be summed using suitable computational software to calculate the minimum points.<br><br>Once the time scale values are selected, the routine continues to step 310 where a table of profiles is generated for each grouping of seeks having nominally the same time scale duration and different displacement lengths (as shown by FIG. 9). Thereafter, during normal operation the table of profiles is used to identify and apply the appropriate set of control profiles to move the selected head 114 the desired seek displacement distance, step 312. The routine then ends at 314."<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 7 |  |
| 7. The method of claim 1, wherein generating the waveform comprises generating the waveform using a low pass filter. | This reference discloses that generating the waveform comprises generating the waveform using a low pass filter.<br><br>*See exemplary disclosures cited above for Claim 1[c]*.<br><br>Kovinskaya at [0031]:<br>"FIG. 2 provides a functional block diagram of a servo control circuit 120 of the disc drive 100. Servo data written to the disc surfaces are transduced by the selected head 112 |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | and provided to a preamplifier/driver circuit (preamp) 122 for preamplification and filtering.  The filtered servo signals are provided to demodulation circuitry (demod) 124 which applies additional conditioning to the signals, including conversion to digital form.  The digital servo signals are then passed to a programmable processor 126, in this case a digital signal processor (DSP) having associated memory 128."<br><br>Kovinskaya, Fig. 2:<br><br><br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 8** |  |
| 8.  The method of claim 1, wherein generating the waveform comprises generating the waveform using finite | *See exemplary disclosures cited above for Claim 1[c] and Claim 7.* |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| impulse response (FIR) low pass filtering information. | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 9** | |
| 9.  The method of claim 8, wherein generating the waveform using FIR low pass filtering information comprises generating a first waveform, performing one or more FIR low pass filtering calculations, and generating the waveform using the output of the one or more FIR low pass filtering calculations. | *See exemplary disclosures cited above for Claim 1[c] and Claims 7 and 8.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 10** | |
| 10.  The method of claim 8, wherein generating the waveform using FIR low pass filtering information comprises generating the waveform using a stored waveform based on an output of a FIR | This reference discloses that generating the waveform using FIR low pass filtering information comprises generating the waveform using a stored waveform based on an output of a FIR low pass filtering calculation and based on one or more scaling factors.<br><br><u>Kovinskaya at [0007]:</u> |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| low pass filtering calculation and based on one or more scaling factors. | "Designers have employed various techniques to select trajectory control profiles (velocity, current, etc.) having shapes that reduce the excitation of such resonances. One approach discussed by Mizoshita et al. in a paper entitled "Vibration Minimized Access Control for Disk Drives," IEEE Transactions on Magnetics, Vol. 32, No. 3, May 1996, uses a minimum-jerk cost function to develop a closed-loop velocity profile to move a disc drive actuator arm. As will be recognized, jerk is defined as change in acceleration (force) with respect to time." <br><br> Kovinskaya at [0081]-[0082]: <br> "Step 308 involves identifying and evaluating selected resonant frequencies of interest and selecting a number of time scales for the control profiles of step 306. This preferably involves calculating energy functions as set forth by equation (18) for each of the frequencies and plotting the results as shown in FIG. 8 for graphical determination of the respective minimum points; alternatively, the energy functions can be summed using suitable computational software to calculate the minimum points. <br><br> Once the time scale values are selected, the routine continues to step 310 where a table of profiles is generated for each grouping of seeks having nominally the same time scale duration and different displacement lengths (as shown by FIG. 9). Thereafter, during normal operation the table of profiles is used to identify and apply the appropriate set of control profiles to move the selected head 114 the desired seek displacement distance, step 312. The routine then ends at 314." <br><br> *See exemplary disclosures cited above for Claim 1[c] and Claims 7 and 8.* <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 11 | |
| 11[pre].  A miniature electronic device comprising: | *See exemplary disclosures cited above for Claim 1[a].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [11a] a stage system having one or more resonant frequencies, the stage system comprising: | This reference discloses a stage system having one or more resonant frequencies.<br><br>*See exemplary disclosures cited above for Claim 1[b].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [11b] a positioner; | This reference discloses a positioner.<br><br>*See exemplary disclosures cited above for Claim 1[a].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [11c] a controller configured to generate a waveform configured to move the positioner from a first position to a second position, the first position and the second position included in a range from a minimum position and a maximum position, | This reference discloses a controller configured to generate a waveform configured to move the positioner from a first position to a second position, the first position and the second position included in a range from a minimum position and a maximum position.<br><br>*See exemplary disclosures cited above for Claim 1[c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [11d] wherein the waveform includes one or more frequency components with associated amplitudes, and wherein the associated amplitude of the one or more resonant frequencies is substantially zero; | This reference discloses the waveform includes one or more frequency components with associated amplitudes, and wherein the associated amplitude of the one or more resonant frequencies is substantially zero.<br><br>*See exemplary disclosures cited above for Claim 1[c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [11e] wherein the device includes a miniature camera, and further comprising one or more optical elements on the positioner; and | This reference discloses that the device includes a miniature camera, and further comprising one or more optical elements on the positioner.<br><br>*See exemplary disclosures cited above for Claim 1[a], [d] and Claim 11[pre].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [11f] wherein the one or more optical elements on the positioner comprise a lens and wherein the waveform is configured to move the lens relative to one or more fixed optical elements to implement at least one of zoom and autofocus. | This reference discloses that the one or more optical elements on the positioner comprise a lens and the waveform is configured to move the lens relative to one or more fixed optical elements to implement at least one of zoom and autofocus.<br><br>*See exemplary disclosures cited above for Claim 1[a], [d] and Claim 3.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 12 | |
| 12. The device of claim 11, further comprising: an actuator configured to receive the waveform and, in response, to move the positioner from the first position to the second position. | This reference discloses that the device further comprises an actuator configured to receive the waveform and, in response, to move the positioner from the first position to the second position.<br><br>*See exemplary disclosures cited above for Claim 1[a], [c] and Claim 2.* |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 13** | |
| 13.  The device of claim 11, wherein the waveform comprises one or more waveform segments, each having an associated segment duration, and wherein the associated segment durations are selected so that the associated amplitude of the one or more resonant frequencies is substantially zero. | This reference discloses that the waveform comprises one or more waveform segments, each having an associated segment duration, and wherein the associated segment durations are selected so that the associated amplitude of the one or more resonant frequencies is substantially zero.  *See exemplary disclosures cited above for Claim 1[c], and Claims 2, 3 and 6.*  To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 14** | |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| 14.  The device of claim 11, wherein the controller is configured to filter the one or more resonant frequencies so that the associated amplitude of the one or more resonant frequencies is substantially zero. | This reference discloses that the controller is configured to filter the one or more resonant frequencies so that the associated amplitude of the one or more resonant frequencies is substantially zero.<br><br>*See exemplary disclosures cited above for Claim 1[c] and Claims 3, 6 and 7.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 15 | |
| 15.  The device of claim 14, wherein the controller includes a low pass filter. | This reference discloses that the controller includes a low pass filter.<br><br>*See exemplary disclosures cited above for Claim 7.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| **CLAIM 16** | |
| 16.  The device of claim 14, wherein the controller includes a finite impulse response (FIR) filter engine configured to generate the waveform using FIR information. | *See exemplary disclosures cited above for Claim 8.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 17** | |
| 17.  The device of claim 16, wherein the controller includes a processor to generate the waveform using the FIR information. | *See exemplary disclosures cited above for Claim 1[c] and Claim 16.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| CLAIM 18 | |
| 18. The device of claim 16, wherein the controller includes circuitry configured to store a waveform pulse shape using the FIR information, and further configured to generate the waveform using the waveform pulse shape. | *See exemplary disclosures cited above for Claim 1[a] and Claim 10.*<br><br>Kovinskaya at [0007]:<br>"Designers have employed various techniques to select trajectory control profiles (velocity, current, etc.) having shapes that reduce the excitation of such resonances. One approach discussed by Mizoshita et al. in a paper entitled "Vibration Minimized Access Control for Disk Drives," IEEE Transactions on Magnetics, Vol. 32, No. 3, May 1996, uses a minimum-jerk cost function to develop a closed-loop velocity profile to move a disc drive actuator arm. As will be recognized, jerk is defined as change in acceleration (force) with respect to time."<br><br>Kovinskaya at [0081]-[0082]:<br>"Step 308 involves identifying and evaluating selected resonant frequencies of interest and selecting a number of time scales for the control profiles of step 306. This preferably involves calculating energy functions as set forth by equation (18) for each of the frequencies and plotting the results as shown in FIG. 8 for graphical determination of the respective minimum points; alternatively, the energy functions can be summed using suitable computational software to calculate the minimum points.<br><br>Once the time scale values are selected, the routine continues to step 310 where a table of profiles is generated for each grouping of seeks having nominally the same time scale duration and different displacement lengths (as shown by FIG. 9). Thereafter, during normal operation the table of profiles is used to identify and apply the appropriate set of control profiles to move the selected head 114 the desired seek displacement distance, step 312. The routine then ends at 314."<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 19 | |
| 19. The device of claim 18, wherein the circuitry is configured to generate the waveform using the waveform pulse shape and one or more scaling factors. | This reference discloses that the circuitry is configured to generate the waveform using the waveform pulse shape and one or more scaling factors.

*See exemplary disclosures cited above for Claim 1[c] and Claims 2 and 10.*

Kovinskaya at [0007]:
"Designers have employed various techniques to select trajectory control profiles (velocity, current, etc.) having shapes that reduce the excitation of such resonances. One approach discussed by Mizoshita et al. in a paper entitled "Vibration Minimized Access Control for Disk Drives," IEEE Transactions on Magnetics, Vol. 32, No. 3, May 1996, uses a minimum-jerk cost function to develop a closed-loop velocity profile to move a disc drive actuator arm. As will be recognized, jerk is defined as change in acceleration (force) with respect to time."

Kovinskaya at [0081]-[0082]:
"Step 308 involves identifying and evaluating selected resonant frequencies of interest and selecting a number of time scales for the control profiles of step 306. This preferably involves calculating energy functions as set forth by equation (18) for each of the frequencies and plotting the results as shown in FIG. 8 for graphical determination of the respective minimum points; alternatively, the energy functions can be summed using suitable computational software to calculate the minimum points. |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Once the time scale values are selected, the routine continues to step 310 where a table of profiles is generated for each grouping of seeks having nominally the same time scale duration and different displacement lengths (as shown by FIG. 9). Thereafter, during normal operation the table of profiles is used to identify and apply the appropriate set of control profiles to move the selected head 114 the desired seek displacement distance, step 312. The routine then ends at 314." |
| | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 20** | |
| 20[pre]. An article comprising a machine-readable medium embodying information indicative of instructions that when performed by one or more machines result in operations comprising: | To the extent the preamble is limiting, this reference discloses an article comprising a machine-readable medium embodying information indicative of instructions that when performed by one or more machines result in operations. |
| | *See exemplary disclosures cited above for Claim 1[a] and Claim 11[pre].* |
| | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [20a] receiving information indicative of a target position of a portion of a stage system included in a miniature camera, the target position different than a current position of the portion of the stage system and included in a range extending from a minimum position to a maximum position, | This reference discloses receiving information indicative of a target position of a portion of a stage system included in a miniature camera, the target position different than a current position of the portion of the stage system and included in a range extending from a minimum position to a maximum position.<br><br>*See exemplary disclosures cited above for Claim 1[a].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [20b] wherein the stage system has at least one mechanical resonance frequency; | This reference discloses that the stage system has at least one mechanical resonance frequency.<br><br>*See exemplary disclosures cited above for Claim 1[b].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [20c] generating a waveform configured to move the portion of the miniature camera to the target position, the waveform including one or more frequency components, and wherein the one or more frequency components do not include the at least one mechanical resonance frequency; and | This reference discloses generating a waveform configured to move the portion of the miniature camera to the target position, the waveform including one or more frequency components, and wherein the one or more frequency components do not include the at least one mechanical resonance frequency.<br><br>*See exemplary disclosures cited above for Claim 1[c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [20d] wherein the information indicative of the target position is indicative of a desired zoom of the miniature camera. | *See exemplary disclosures cited above for Claim 1[d].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 21** | |
| 21.  The article of claim 20, further comprising transmitting the waveform to an actuator. | This reference discloses further comprising transmitting the waveform to an actuator.<br><br>*See exemplary disclosures cited above for Claim 2.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 22** | |
| 22.  The article of claim 20, further comprising moving the portion of the stage system to the target position using the actuator with substantially no oscillation of the portion of the stage system about the target position. | This reference discloses further comprising moving the portion of the stage system to the target position using the actuator with substantially no oscillation of the portion of the stage system about the target position.<br><br>*See exemplary disclosures cited above for Claim 1[c] and Claim 3.* |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 23 | |
| 23.  The article of claim 20, wherein generating the waveform comprises generating a waveform including one or more waveform segments each having an associated duration, and wherein the associated durations are selected so the one or more frequency components do not include the at least one mechanical resonance frequency. | This reference discloses generating the waveform comprises generating a waveform including one or more waveform segments each having an associated duration, and wherein the associated durations are selected so the one or more frequency components do not include the at least one mechanical resonance frequency.<br><br>*See exemplary disclosures cited above for Claim 1[c] and Claim 6.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 24 | |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| 24.  The article of claim 20, wherein generating the waveform comprises generating the waveform using a low pass filter. | This reference discloses generating the waveform comprises generating the waveform using a low pass filter.<br><br>*See exemplary disclosures cited above for Claim 7.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 25 | |
| 25.  The article of claim 20, wherein generating the waveform comprises generating the waveform using finite impulse response (FIR) low pass filtering information. | This reference discloses generating the waveform comprises generating the waveform using finite impulse response (FIR) low pass filtering information.<br><br>*See exemplary disclosures cited above for Claim 8.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 26** | |
| 26.  The article of claim 25, wherein generating the waveform using FIR low pass filtering information comprises generating a first waveform, performing one or more FIR low pass filtering calculations, and generating the waveform using the output of the one or more FIR low pass filtering calculations. | *See exemplary disclosures cited above for Claims 7-9.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 27** | |
| 27.  The article of claim 25, wherein generating the waveform using FIR low pass filtering information comprises generating the waveform using a stored waveform based on an output of a FIR low pass filtering calculation and based on one or more scaling factors. | *See exemplary disclosures cited above for Claims 7-10.*<br><br>Kovinskaya at [0007]:<br>"Designers have employed various techniques to select trajectory control profiles (velocity, current, etc.) having shapes that reduce the excitation of such resonances.  One approach discussed by Mizoshita et al. in a paper entitled "Vibration Minimized Access Control for Disk Drives," IEEE Transactions on Magnetics, Vol. 32, No. 3, May 1996, uses a minimum-jerk cost function to develop a closed-loop velocity profile to move a disc drive actuator arm.  As will be recognized, jerk is defined as change in acceleration (force) with respect to time."<br><br>Kovinskaya at [0081]-[0082]: |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | "Step 308 involves identifying and evaluating selected resonant frequencies of interest and selecting a number of time scales for the control profiles of step 306. This preferably involves calculating energy functions as set forth by equation (18) for each of the frequencies and plotting the results as shown in FIG. 8 for graphical determination of the respective minimum points; alternatively, the energy functions can be summed using suitable computational software to calculate the minimum points. <br><br> Once the time scale values are selected, the routine continues to step 310 where a table of profiles is generated for each grouping of seeks having nominally the same time scale duration and different displacement lengths (as shown by FIG. 9). Thereafter, during normal operation the table of profiles is used to identify and apply the appropriate set of control profiles to move the selected head 114 the desired seek displacement distance, step 312. The routine then ends at 314." <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| CLAIM 28 | |
| 28[pre].  A positioning system comprising: | To the extent the preamble is limiting, this reference discloses a positioning system.<br><br>*See exemplary disclosures cited above for Claim 1[a] and Claim 11[pre]*.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [28a] a positioner configured to effect focus or zoom of a miniature camera; | *See exemplary disclosures cited above for Claim 1[a], [d]*.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| [28b] an input configured to receive information indicative of a target position for the positioner; | This reference discloses an input configured to receive information indicative of a target position for the positioner.<br><br>*See exemplary disclosures cited above for Claim 1[a], [d] and Claim 4.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [28c] memory storing information indicative of a waveform profile, wherein the waveform profile comprises one or more frequency components having associated amplitudes, and wherein a frequency component having a resonance frequency of the positioning system is substantially zero; and | This reference discloses memory storing information indicative of a waveform profile, wherein the waveform profile comprises one or more frequency components having associated amplitudes, and wherein a frequency component having a resonance frequency of the positioning system is substantially zero.<br><br>*See exemplary disclosures cited above for Claim 1[b], [c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [28d] circuitry to generate a positioning waveform using the information indicative of the target position and the waveform profile. | This reference discloses circuitry to generate a positioning waveform using the information indicative of the target position and the waveform profile.<br><br>*See exemplary disclosures cited above for Claim 1[c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 29 | |
| 29. The positioning system of claim 28, wherein the memory and the circuitry are included in an application-specific integrated circuit. | *See exemplary disclosures cited above for Claim 1[a] and Claim 28[c].*<br><br>Kovinskaya at [0031]:<br>"FIG. 2 provides a functional block diagram of a servo control circuit 120 of the disc drive 100. Servo data written to the disc surfaces are transduced by the selected head 112 and provided to a preamplifier/driver circuit (preamp) 122 for preamplification and filtering. The filtered servo signals are provided to demodulation circuitry (demod) 124 which applies additional conditioning to the signals, including conversion to digital form. The digital servo signals are then passed to a programmable processor 126, in this case a digital signal processor (DSP) having associated memory 128." |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Kovinskaya, Fig. 2:<br><br><br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 30** | |
| 30.  The positioning system of claim 28, wherein the input comprises an inter-integrated circuit compatible interface. | *See exemplary disclosures cited above for Claim 1[a], [c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 31 | |
| 31.  The positioning system of claim 28, wherein the information indicative of the target position comprises a scaling factor configured to move a portion of the positioning system from a current position to the target position. | This reference discloses that the information indicative of the target position comprises a scaling factor configured to move a portion of the positioning system from a current position to the target position.<br><br>*See exemplary disclosures cited above for Claim 1[a], Claim 10, and Claim 28[a].*<br><br>Kovinskaya at [0007]:<br>"Designers have employed various techniques to select trajectory control profiles (velocity, current, etc.) having shapes that reduce the excitation of such resonances.  One approach discussed by Mizoshita et al. in a paper entitled "Vibration Minimized Access Control for Disk Drives," IEEE Transactions on Magnetics, Vol. 32, No. 3, May 1996, uses a minimum-jerk cost function to develop a closed-loop velocity profile to move a disc drive actuator arm.  As will be recognized, jerk is defined as change in acceleration (force) with respect to time."<br><br>Kovinskaya at [0081]-[0082]:<br>"Step 308 involves identifying and evaluating selected resonant frequencies of interest and selecting a number of time scales for the control profiles of step 306.  This preferably involves calculating energy functions as set forth by equation (18) for each of the frequencies and plotting the results as shown in FIG. 8 for graphical determination of the respective minimum points; alternatively, the energy functions can be summed using suitable computational software to calculate the minimum points.<br><br>Once the time scale values are selected, the routine continues to step 310 where a table of profiles is generated for each grouping of seeks having nominally the same time scale |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | duration and different displacement lengths (as shown by FIG. 9). Thereafter, during normal operation the table of profiles is used to identify and apply the appropriate set of control profiles to move the selected head 114 the desired seek displacement distance, step 312. The routine then ends at 314."<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 32** |  |
| [32a] A method comprising: generating a waveform; | This reference discloses a method comprising generating a waveform.<br><br>*See exemplary disclosures cited above for Claim 1[c]*.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| [32b] using the waveform to move a positioner of a miniature camera so as to effect a desired zoom or focus of the miniature camera; | *See exemplary disclosures cited above for Claim 1[c], [d].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of these other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions |
| [32c] wherein the waveform lacks at least one resonant frequency of the positioner. | This reference discloses that the waveform lacks at least one resonant frequency of the positioner.<br><br>*See exemplary disclosures cited above for Claim 1[b], [c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions |

**Exhibit F-23**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to 2003/0067710 to Kovinskaya et al. ("Kovinskaya")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| CLAIM 33 | |
| 33.  The method as recited in claim 32, wherein the positioner comprises an optical component for use in focusing the miniature camera. | *See exemplary disclosures cited above for Claim 1[d].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 34 | |
| 34.  The method as recited in claim 32, wherein the positioner comprises an optical component for use in zooming the miniature camera. | *See exemplary disclosures cited above for Claim 1[d] and Claim 4.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art.  To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation.  Exemplary combinations are also identified in Exhibit B of these contentions.  One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| CLAIM 1 | |
| 1[a] A method comprising: receiving information indicative of a target position of a portion of a stage system included in a miniature camera, the target position being different than a current position of the portion of the stage system and included in a range extending from a minimum position to a maximum position, and | Advanced Compensation Tools at 40: <br> "PID filters are common in motion control. But there are additional tools, beyond PID filters, that can improve the performance of some motion systems. <br><br> **Integrator freeze** <br> Consider a system where the motor must move rapidly between two points, and the design objective is to complete the move (which includes settling time) in a minimum amount of time. Assume that you are using an ordinary PID filter. <br><br> During the deceleration phase, the motor develops a large following error. This error is, of course, integrated. As a result, once the motion is complete, the integrator output continues to produce a voltage, forcing the motor to overshoot, which prolongs the time it takes to settle the move. <br><br> The best solution here is to 'freeze' the operation of the integrator whenever the motor is commanded to move. In other words, the integral would be active only during time intervals where the motor is required to stop. This provides the needed accuracy, without the unnecessary overshoot." <br><br> *See also Advanced Compensation Tools* at 40-41, Figs. 1-3. <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [1b] wherein the stage system has at least one mechanical resonance frequency; | This reference discloses that the stage system has at least one mechanical resonance frequency.<br><br>*See exemplary disclosures cited above for Claim 1[a].*<br><br><u>Advanced Compensation Tools at 40-41:</u><br>"In many systems, the mechanical couplings between the motor, load, and sensor are not perfectly rigid, but instead act like springs. Here, the motor response may overshoot or even oscillate at the resonance frequency resulting in longer settling time. The most effective way to deal with this torsional resonance is by using an anti-resonance notch filter.<br><br>According to standard frequency analysis, resonance is characterized by a pair of poles in the complex frequency plane. The imaginary component indicates the resonant frequency, while the real component determines the damping level. The larger the magnitude of the real part, the greater the damping."<br><br>*See also Advanced Compensation Tools* at 40-41, Figs. 1-3.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [1c] generating a waveform configured to move the portion to the target position, the waveform not including the at least one mechanical resonance frequency; | This reference discloses generating a waveform configured to move the portion to the target position, the waveform not including the at least one mechanical resonance frequency. *See exemplary disclosures cited for Claim 1[a], [b].* Advanced Compensation Tools at 40-41: "notch filter consists of a pair of complex zeros and a pair of complex poles. The purpose of the complex zeros is to cancel the resonance poles. The complex poles, on the other hand, create an additional resonance. If the magnitude of the real value of the poles is large enough, it will result in a well-damped response. A model showing what the addition of a notch filter means to the dynamic response of an electromechanical motion control system can be found in Figure 3. The diagram shows where the poles and zeros of the system are located on the splane. The poles marked "A" are the ones due to the mechanical resonance. These are cancelled by the complex zeros marked by "B." The poles marked "C" are the new equivalent resonance introduced by the notch filter. Although it is assumed that the notch filter completely cancels the resonance poles, perfect cancellation is not required. As long as the notch zeros are close enough to the original poles, they can adequately reduce their effect, thereby improving system response." |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | Advanced Compensation Tools, Fig. 2:<br><br><br><br>Advanced Compensation Tools, Fig. 3: |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| |  |

*See also Advanced Compensation Tools* at 40-41, Fig. 1.

To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | cover pleading of these contentions. |
| [1d] wherein the information indicative of the target position is indicative of a desired zoom or focus of the miniature camera. | *See exemplary disclosures cited for Claim 1[a]-[c].*<br><br>*See also Advanced Compensation Tools* at 40-41, Figs. 1-3.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 2 | |
| 2. The method of claim 1, further comprising transmitting the waveform to an actuator. | This reference discloses transmitting the waveform to an actuator.<br><br>*See exemplary disclosures cited above for Claim 1[a]-[c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 3** | |
| 3. The method of claim 2, further comprising moving the portion of the stage system to the target position using the actuator with substantially no oscillation of the portion of the stage system about the target position. | This reference discloses moving the portion of the stage system to the target position using the actuator with substantially no oscillation of the portion of the stage system about the target position.<br><br>*See exemplary disclosures cited above for Claim 1[a]-[c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 4** | |
| 4. The method of claim 1, wherein the information indicative of the target position is indicative of a desired zoom of the miniature camera. | *See exemplary disclosures cited above for Claim 1[d].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 5 |  |
| 5. The method of claim 1, wherein the information indicative of the target position is indicative of a focus position of a lens included in the miniature camera. | *See exemplary disclosures cited above for Claim 1[d].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 6 |  |
| 6. The method of claim 1, wherein generating the waveform comprises generating a waveform including one or more waveform segments each having an associated duration, and wherein the associated durations are selected so the one or more frequency components do not include the at least one mechanical resonance frequency. | *See exemplary disclosures cited above for Claim 1[c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 7 | |
| 7. The method of claim 1, wherein generating the waveform comprises generating the waveform using a low pass filter. | This reference discloses that generating the waveform comprises generating the waveform using a low pass filter.<br><br>*See exemplary disclosures cited above for Claim 1[c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 8 | |
| 8. The method of claim 1, wherein generating the waveform comprises generating the waveform using finite impulse response (FIR) low pass filtering information. | This reference discloses that generating the waveform comprises generating the waveform using finite impulse response (FIR) low pass filtering information.<br><br>*See exemplary disclosures cited above for Claim 1[c] and Claim 7.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 9** |  |
| 9. The method of claim 8, wherein generating the waveform using FIR low pass filtering information comprises generating a first waveform, performing one or more FIR low pass filtering calculations, and generating the waveform using the output of the one or more FIR low pass filtering calculations. | This reference discloses that generating the waveform using FIR low pass filtering information comprises generating a first waveform, performing one or more FIR low pass filtering calculations, and generating the waveform using the output of the one or more FIR low pass filtering calculations. *See exemplary disclosures cited above for Claim 1[c] and Claims 7 and 8.* To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 10** |  |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| 10. The method of claim 8, wherein generating the waveform using FIR low pass filtering information comprises generating the waveform using a stored waveform based on an output of a FIR low pass filtering calculation and based on one or more scaling factors. | This reference discloses that generating the waveform using FIR low pass filtering information comprises generating the waveform using a stored waveform based on an output of a FIR low pass filtering calculation and based on one or more scaling factors.<br><br>*See exemplary disclosures cited above for Claim 1[c] and Claims 7 and 8.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 11 | |
| 11. [pre] A miniature electronic device comprising: | *See exemplary disclosures cited above for Claim 1[a].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | |
| [11a] a stage system having one or more resonant frequencies, the stage system comprising: | This reference discloses a stage system having one or more resonant frequencies.<br><br>*See exemplary disclosures cited above for Claim 1[b]*.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [11b] a positioner; | This reference discloses a positioner.<br><br>*See exemplary disclosures cited above for Claim 1[a]*.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | |
| [11c] a controller configured to generate a waveform configured to move the positioner from a first position to a second position, the first position and the second position included in a range from a minimum position and a maximum position, | This reference discloses a controller configured to generate a waveform configured to move the positioner from a first position to a second position, the first position and the second position included in a range from a minimum position and a maximum position. *See exemplary disclosures cited above for Claim 1[c].* To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [11d] wherein the waveform includes one or more frequency components with associated amplitudes, and wherein the associated amplitude of the one or more resonant frequencies is substantially zero; | This reference discloses the waveform includes one or more frequency components with associated amplitudes, and wherein the associated amplitude of the one or more resonant frequencies is substantially zero. *See exemplary disclosures cited above for Claim 1[c].* To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [11e] wherein the device includes a miniature camera, and further comprising one or more optical elements on the positioner; and | *See exemplary disclosures cited above for Claim 1[a], [d] and Claim 11[pre].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [11f] wherein the one or more optical elements on the positioner comprise a lens and wherein the waveform is configured to move the lens relative to one or more fixed optical elements to implement at least one of zoom and autofocus. | *See exemplary disclosures cited above for Claim 1[a], [d] and Claim 3.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | cover pleading of these contentions. |
| CLAIM 12 | |
| 12. The device of claim 11, further comprising: an actuator configured to receive the waveform and, in response, to move the positioner from the first position to the second position. | This reference discloses that the device further comprises an actuator configured to receive the waveform and, in response, to move the positioner from the first position to the second position.<br><br>*See exemplary disclosures cited above for Claim 1[a], [c] and Claim 2.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 13 | |
| 13. The device of claim 11, wherein the waveform comprises one or more waveform segments, each having an associated segment duration, and wherein the associated segment durations are selected so that the associated amplitude of the one or more resonant frequencies is substantially zero. | This reference discloses that the waveform comprises one or more waveform segments, each having an associated segment duration, and wherein the associated segment durations are selected so that the associated amplitude of the one or more resonant frequencies is substantially zero.<br><br>*See exemplary disclosures cited above for Claim 1[c], and Claims 2, 3 and 6.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 14 | |
| 14. The device of claim 11, wherein the controller is configured to filter the one or more resonant frequencies so that the associated amplitude of the one or more resonant frequencies is substantially zero. | This reference discloses that the controller is configured to filter the one or more resonant frequencies so that the associated amplitude of the one or more resonant frequencies is substantially zero. *See exemplary disclosures cited above for Claim 1[c] and Claims 3, 6 and 7.* To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 15 | |
| 15. The device of claim 14, wherein the | This reference discloses that the controller includes a low pass filter. |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| controller includes a low pass filter. | *See exemplary disclosures cited above for Claim 1[c] and Claim 7.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 16 | |
| 16. The device of claim 14, wherein the controller includes a finite impulse response (FIR) filter engine configured to generate the waveform using FIR information. | *See exemplary disclosures cited above for Claim 8.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 17 | |
| 17. The device of claim 16, wherein the | *See exemplary disclosures cited above for Claim 1[c] and Claim 16.* |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| controller includes a processor to generate the waveform using the FIR information. | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 18 | |
| 18. The device of claim 16, wherein the controller includes circuitry configured to store a waveform pulse shape using the FIR information, and further configured to generate the waveform using the waveform pulse shape. | *See exemplary disclosures cited above for Claim 1[a] and Claim 10.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 19 | |
| 19. The device of claim 18, wherein the | This reference discloses that the circuitry is configured to generate the waveform using |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| circuitry is configured to generate the waveform using the waveform pulse shape and one or more scaling factors. | the waveform pulse shape and one or more scaling factors.<br><br>*See exemplary disclosures cited above for Claim 1[c] and Claims 2 and 10.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 20** | |
| 20. [pre]. An article comprising a machine-readable medium embodying information indicative of instructions that when performed by one or more machines result in operations comprising: | To the extent the preamble is limiting, this reference discloses an article comprising a machine-readable medium embodying information indicative of instructions that when performed by one or more machines result in operations.<br><br>*See exemplary disclosures cited above for Claim 1[a] and Claim 11[pre].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [20a] receiving information indicative of a target position of a portion of a stage system included in a miniature camera, the target position different than a current position of the portion of the stage system and included in a range extending from a minimum position to a maximum position, | *See exemplary disclosures cited above for Claim 1[a].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [20b] wherein the stage system has at least one mechanical resonance frequency; | This reference discloses that the stage system has at least one mechanical resonance frequency.<br><br>*See exemplary disclosures cited above for Claim 1[b].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | cover pleading of these contentions. |
| [20c] generating a waveform configured to move the portion of the miniature camera to the target position, the waveform including one or more frequency components, and wherein the one or more frequency components do not include the at least one mechanical resonance frequency; and | This reference discloses generating a waveform configured to move the portion of the miniature camera to the target position, the waveform including one or more frequency components, and wherein the one or more frequency components do not include the at least one mechanical resonance frequency; and<br><br>*See exemplary disclosures cited above for Claim 1[c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [20d] wherein the information indicative of the target position is indicative of a desired zoom of the miniature camera. | This reference discloses that the information indicative of the target position is indicative of a desired zoom of the miniature camera.<br><br>*See exemplary disclosures cited above for Claim 1[d].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 21** | |
| 21. The article of claim 20, further comprising transmitting the waveform to an actuator. | This reference discloses further comprising transmitting the waveform to an actuator.<br><br>*See exemplary disclosures cited above for Claim 2.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 22** | |
| 22. The article of claim 20, further comprising moving the portion of the stage system to the target position using the actuator with substantially no oscillation of the portion of the stage system about the target position. | This reference discloses further comprising moving the portion of the stage system to the target position using the actuator with substantially no oscillation of the portion of the stage system about the target position.<br><br>*See exemplary disclosures cited above for Claim 1[c] and Claim 3.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 23 | |
| 23. The article of claim 20, wherein generating the waveform comprises generating a waveform including one or more waveform segments each having an associated duration, and wherein the associated durations are selected so the one or more frequency components do not include the at least one mechanical resonance frequency. | This reference discloses generating the waveform comprises generating a waveform including one or more waveform segments each having an associated duration, and wherein the associated durations are selected so the one or more frequency components do not include the at least one mechanical resonance frequency.<br><br>*See exemplary disclosures cited above for Claim 1[c] and Claim 6.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 24 | |
| 24. The article of claim 20, wherein | This reference discloses generating the waveform comprises generating the waveform |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| generating the waveform comprises generating the waveform using a low pass filter. | using a low pass filter.<br><br>*See exemplary disclosures cited above for Claim 7.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 25** | |
| 25. The article of claim 20, wherein generating the waveform comprises generating the waveform using finite impulse response (FIR) low pass filtering information. | This reference discloses generating the waveform comprises generating the waveform using finite impulse response (FIR) low pass filtering information.<br><br>*See exemplary disclosures cited above for Claim 8.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | cover pleading of these contentions. |
| **CLAIM 26** | |
| 26. The article of claim 25, wherein generating the waveform using FIR low pass filtering information comprises generating a first waveform, performing one or more FIR low pass filtering calculations, and generating the waveform using the output of the one or more FIR low pass filtering calculations. | This reference discloses generating the waveform using FIR low pass filtering information comprises generating a first waveform, performing one or more FIR low pass filtering calculations, and generating the waveform using the output of the one or more FIR low pass filtering calculations.<br><br>*See exemplary disclosures cited above for Claims 7-9.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 27** | |
| 27. The article of claim 25, wherein generating the waveform using FIR low pass filtering information comprises generating the waveform using a stored waveform based on an output of a FIR low pass filtering calculation and based on one or more scaling factors. | This reference discloses generating the waveform using FIR low pass filtering information comprises generating the waveform using a stored waveform based on an output of a FIR low pass filtering calculation and based on one or more scaling factors.<br><br>*See exemplary disclosures cited above for Claims 7-10.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 28** | |
| 28. [pre] A positioning system comprising: | To the extent the preamble is limiting, this reference discloses a positioning system. <br><br> *See exemplary disclosures cited above for Claim 1[a] and Claim 11[pre].* <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [28a] a positioner configured to effect focus or zoom of a miniature camera; | This reference discloses a positioner configured to effect focus or zoom of a miniature camera. <br><br> *See exemplary disclosures cited above for Claim 1[a], [d].* |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [28b] an input configured to receive information indicative of a target position for the positioner; | This reference discloses an input configured to receive information indicative of a target position for the positioner. *See exemplary disclosures cited above for Claim 1[a], [d] and Claim 4.* To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [28c] memory storing information indicative of a waveform profile, wherein the waveform profile comprises one or | This reference discloses memory storing information indicative of a waveform profile, wherein the waveform profile comprises one or more frequency components having associated amplitudes, and wherein a frequency component having a resonance |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| more frequency components having associated amplitudes, and wherein a frequency component having a resonance frequency of the positioning system is substantially zero; and | frequency of the positioning system is substantially zero.<br><br>*See exemplary disclosures cited above for Claim 1[b], [c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [28d] circuitry to generate a positioning waveform using the information indicative of the target position and the waveform profile. | This reference discloses circuitry to generate a positioning waveform using the information indicative of the target position and the waveform profile.<br><br>*See exemplary disclosures cited above for Claim 1[c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | |
| CLAIM 29 | |
| 29. The positioning system of claim 28, wherein the memory and the circuitry are included in an application-specific integrated circuit. | *See exemplary disclosures cited above for Claim 1[a] and Claim 28[c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 30 | |
| 30. The positioning system of claim 28, wherein the input comprises an inter-integrated circuit compatible interface. | *See exemplary disclosures cited above for Claim 1[a], [c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 31 | |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| 31. The positioning system of claim 28, wherein the information indicative of the target position comprises a scaling factor configured to move a portion of the positioning system from a current position to the target position. | *See exemplary disclosures cited above for Claim 1[a], Claim 10, and Claim 28[a].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 32 | |
| 32. [a] A method comprising: generating a waveform; | This reference discloses a method comprising generating a waveform.<br><br>*See exemplary disclosures cited above for Claim 1[c].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [32b] using the waveform to move a | *See exemplary disclosures cited above for Claim 1[c], [d].* |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| positioner of a miniature camera so as to effect a desired zoom or focus of the miniature camera; | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions |
| [32c] wherein the waveform lacks at least one resonant frequency of the positioner. | This reference discloses that the waveform lacks at least one resonant frequency of the positioner. *See exemplary disclosures cited above for Claim 1[b], [c].* To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions |
| CLAIM 33 | |
| 33. The method as recited in claim 32, | *See exemplary disclosures cited above for Claim 1[d].* |

**Exhibit F-24**
**Invalidity of U.S. Patent No. 7,697,829 (the "'829 Patent")**
**Due to Motion Control Made Easy - Advanced Compensation Tools, Motion System/PT design (published, August 2000)**
**("Advanced Compensation Tools" or "ACT")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| wherein the positioner comprises an optical component for use in focusing the miniature camera. | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 34 | |
| 34. The method as recited in claim 32, wherein the positioner comprises an optical component for use in zooming the miniature camera. | *See exemplary disclosures cited above for Claim 1[d] and Claim 4.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent")**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| **CLAIM 1** | |
| 1 [pre] A method of tracking a face in a reference image stream using a digital image acquisition device, comprising: | *See* Wong at pages 1-6.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [1a] acquiring a full resolution main image and an image stream of relatively low resolution reference images each including one or more face regions; | *See* Wong at pages 1-6.<br><br>*See exemplary disclosures cited above for Claim 1[pre].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [1b] identifying one or more face regions | *See* Wong at pages 1-6. |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent")**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| within two or more of said reference images; | *See exemplary disclosures cited above for Claim 1[pre], [a].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
|---|---|
| [1c] determining a relative movement between said two or more reference images; | This reference discloses determining a relative movement between said two or more reference images.<br>*See exemplary disclosures cited above for Claim 1[pre]-[b].*<br><br>Wong at page 1:<br>"In video coding, similarities between video frames can be exploited to achieve higher compression ratios. However, moving objects within a video scene diminish the compression efficienc y of the straightforward approach that only considers pels1 located at the same position in the video frames. In order to achieve higher compression efficienc y, motion estimation was introduced in an attempt to accurately capture such movements. It is performed for every macroblock, i.e., an array of 16£16 pels, in the to be encoded frame by finding its 'best' match in a reference frame. The most commonly used metric is the "sum of absolute differences" (SAD), which adds up the absolute differences between corresponding elements in the macroblocks. The SAD operation is very time-consuming due to the complex nature of the absolute operation and the subsequent multitude of additions. In [15], a parallel hardware implementation was proposed to speed up the SAD computation process. This paper describes this parallel |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent")**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

|  | hardware implementation of the SAD operation in field-programmable gate arrays (FPGAs)."

Wong at page 2:
"**Motion estimation** has been introduced in an attempt to capture the motion of objects within a video scene. I.e., find the best match between the pel(s) in the current frame and the pel(s) in the reference frame. To this end, a search area within the reference frame must be traversed in order to find the best match. After finding the best match, the difference( s) between the pels must be coded together with the difference between the locations (motion vector). Motion estimation can be performed for single pels in the current frame, but it is rarely used, because the coding of motion vectors for single pels reverses the gains of predictive coding. Therefore, block-based motion estimation is the most commonly used form in which a search is performed in the reference frame for a block of pels in the current frame."

Wong at pages 2-3:
"Considering that block-based motion estimation is most commonly used in multimedia standards such as MPEG- 1 [12], MPEG-2 [5], and Px64 [10], we briefly highlight the block-based forms of the MSE and the MAD metrics. Such a block is usually 16 X 16 large and is referred to as **macroblock**. The MSE is calculated as follows:

$$MSE(x, y, r, s) = \frac{1}{256} \sum_{i=0}^{15} \sum_{j=0}^{15} \left( A_{(x+i, y+j)} - B_{((x+r)+i, (y+s)+j)} \right)^2$$

$with\ 0 \leq x, y < framesize$
$with\ (r, s)\ being\ the\ motion\ vector$
$with\ A_{(x,y)}\ being\ a\ current\ frame\ pel\ at\ (x, y)$
$with\ B_{(x,y)}\ being\ a\ reference\ frame\ pel\ at\ (x, y)$ |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent")**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| | |
|---|---|
| | Due to the square operation on the differences, this operation is less commonly used. Instead, the MAD is used more often and it is calculated as follows: |

$$MAD(x, y, r, s) =$$

$$\frac{1}{256} \sum_{i=0}^{15} \sum_{j=0}^{15} |(A_{(x+i,y+j)} - B_{((x+r)+i,(y+s)+j)})|$$

$$with \ 0 \le x, y < framesize$$
$$with \ (r, s) \ being \ the \ motion \ vector$$
$$with \ A_{(x,y)} \ being \ a \ current \ frame \ pel \ at \ (x, y)$$
$$with \ B_{(x,y)} \ being \ a \ reference \ frame \ pel \ at \ (x, y)$$

The vector *(x; y)* denotes the location of the to be encoded macroblock in the current frame. Both x and y are multiples of 16 due to the blocksize is 16 X 16. The (motion) vector *(r, s)* denotes the location of the macroblock to be used as a prediction in the reference block relative to the location of the to be coded macroblock in the current frame. Due to the computational simplicity of the MAD, it is being used more often than the MSE. The MAD can be rewritten to:

$$MAD(x, y, r, s) = \frac{SAD(x, y, r, s)}{256}$$

,,

*See also, id.,* at pages 1-4.

To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent)**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| | |
|---|---|
| | Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [1d] determining a size and location of said one or more face regions within each of said two or more reference images; | *See exemplary disclosures cited above for Claim 1[pre], [b].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [1e] applying concentrated face detection to at least a portion of said full resolution main image in a predicted location for candidate face regions having a predicted size as a function of the determined relative movement and the size and location of said one or more face regions within said reference images, to provide a set of candidate face regions for said main image; | *See exemplary disclosures cited above for Claim 1[pre], [a]-[d].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent)**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| | |
|---|---|
| [1f] applying image processing to said main image based on said information regarding said set of candidate face regions to generate a processed version of the main image; | *See exemplary disclosures cited above for Claim 1[e].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [1g] displaying, storing, or transmitting the processed version of said main image, or combinations thereof; | *See exemplary disclosures cited above for Claim 1[pre], [f].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 2** | |
| 2. A method as claimed in claim 1 wherein said indication of relative movement comprises an amount and | This reference discloses that said indication of relative movement comprises an amount and direction of movement. |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent)**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| direction of movement; | *See exemplary disclosures cited above for Claim 1 [c], [e].* |
|---|---|
| | Wong at Page 1, Columns 1-2: |
| | "In video coding, similarities between video frames can be exploited to achieve higher compression ratios. However, moving objects within a video scene diminish the compression efficienc y of the straightforward approach that only considers pels1 located at the same position in the video frames. In order to achieve higher compression efficienc y, motion estimation was introduced in an attempt to accurately capture such movements. It is performed for every macroblock, i.e., an array of 16£16 pels, in the to be encoded frame by finding its 'best' match in a reference frame. The most commonly used metric is the "sum of absolute differences" (SAD), which adds up the absolute differences between corresponding elements in the macroblocks. The SAD operation is very time-consuming due to the complex nature of the absolute operation and the subsequent multitude of additions. In [15], a parallel hardware implementation was proposed to speed up the SAD computation process. This paper describes this parallel hardware implementation of the SAD operation in field-programmable gate arrays (FPGAs)." |
| | Wong at Page 2, Column 2: |
| | "**Motion estimation** has been introduced in an attempt to capture the motion of objects within a video scene. I.e., find the best match between the pel(s) in the current frame and the pel(s) in the reference frame. To this end, a search area within the reference frame must be traversed in order to find the best match. After finding the best match, the difference( s) between the pels must be coded together with the difference between the locations (motion vector). Motion estimation can be performed for single pels in the current frame, but it is rarely used, because the coding of motion vectors for single pels reverses the gains of predictive coding. Therefore, block-based motion estimation is the most commonly used form in which a search is performed in the reference frame for a block of pels in the current frame." |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent")**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| | |
|---|---|
| | Wong at Page 2, Column 1 - Page 3, Column 2:<br>"Considering that block-based motion estimation is most commonly used in multimedia standards such as MPEG-1 [12], MPEG-2 [5], and Px64 [10], we briefly highlight the block-based forms of the MSE and the MAD metrics. Such a block is usually 16 X 16 large and is referred to as **macroblock**. The MSE is calculated as follows:<br><br>$$MSE(x,y,r,s) =$$<br>$$\frac{1}{256}\sum_{i=0}^{15}\sum_{j=0}^{15}\left(A_{(x+i,y+j)} - B_{((x+r)+i,(y+s)+j)}\right)^2$$<br><br>$with\ 0 \leq x,y < framesize$<br>$with\ (r,s)\ being\ the\ motion\ vector$<br>$with\ A_{(x,y)}\ being\ a\ current\ frame\ pel\ at\ (x,y)$<br>$with\ B_{(x,y)}\ being\ a\ reference\ frame\ pel\ at\ (x,y)$<br><br>Due to the square operation on the differences, this operation is less commonly used. Instead, the MAD is used more often and it is calculated as follows:<br><br>$$MAD(x,y,r,s) =$$<br>$$\frac{1}{256}\sum_{i=0}^{15}\sum_{j=0}^{15}\left|\left(A_{(x+i,y+j)} - B_{((x+r)+i,(y+s)+j)}\right)\right|$$<br><br>$with\ 0 \leq x,y < framesize$<br>$with\ (r,s)\ being\ the\ motion\ vector$<br>$with\ A_{(x,y)}\ being\ a\ current\ frame\ pel\ at\ (x,y)$<br>$with\ B_{(x,y)}\ being\ a\ reference\ frame\ pel\ at\ (x,y)$ |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent")**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| | |
|---|---|
| | The vector *(x; y)* denotes the location of the to be encoded macroblock in the current frame. Both x and y are multiples of 16 due to the blocksize is 16 X 16. The (motion) vector *(r, s)* denotes the location of the macroblock to be used as a prediction in the reference block relative to the location of the to be coded macroblock in the current frame. Due to the computational simplicity of the MAD, it is being used more often than the MSE. The MAD can be rewritten to: $$MAD(x, y, r, s) = \frac{SAD(x, y, r, s)}{256}$$ "<br><br>*See also, id.,* at pages 2-4.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 3** | |
| 3. A method as claimed in claim 1 wherein said adjusted face detection comprises: prior to applying face detection, shifting said associated set of candidate face regions as a function of said movement. | *See exemplary disclosures cited above for Claim 1 [c], [e].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent")**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| | contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
|---|---|
| CLAIM 4 | |
| 4. A method as claimed in claim 3, further comprising shifting said face regions as a function of their size and as a function of said movement. | *See exemplary disclosures cited above for Claim 1[c], [d], [e] and Claim 3.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 5 | |
| 5. A method as claimed in claim 1 wherein said adjusted face detection comprises: applying face detection to a region of a next acquired image comprising candidate regions corresponding to the previously acquired image expanded as a function of said movement. | *See exemplary disclosures cited above for Claim 1[c], [d], [e].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent")**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| | |
|---|---|
| | contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 6 | |
| 6. A method as claimed in claim 5, wherein said candidate regions of said next acquired image are expanded as a function of their original size and as a function of said movement. | *See exemplary disclosures cited above for Claim 1[c], [d], [e], and Claim 5.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 8 | |
| 8. A method as claimed in claim 1 further comprising tracking candidate face regions of different sizes from a plurality of images of said image stream. | *See exemplary disclosures cited above for Claim 1 [pre], [b], [d].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent")**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| | cover pleading of these contentions. |
|---|---|
| CLAIM 9 | |
| 9. A method as claimed in claim 1 further comprising merging said set of candidate face regions with one or more previously detected face regions to provide a set of candidate face regions having different parameters. | *See exemplary disclosures cited above for Claims 7 and 8.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 10 | |
| 10. A method as claimed in claim 1, wherein the method is performed periodically on a selected plurality of images of a reference image stream, wherein said plurality of images include a full resolution main acquired image chronologically following a plurality of preview images. | *See exemplary disclosures cited above for Claim 1[pre], [a], [g].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent")**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| | |
|---|---|
| CLAIM 11 | |
| 11. A method as claimed in claim 1, further comprising displaying an acquired image and superimposing one or more indications of one or more tracked candidate face regions on said displayed acquired image. | *See exemplary disclosures cited above for Claim 1[pre], [a], [g] and Claim 10.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 12 | |
| 12. A method as claimed in claim 11 further comprising storing at least one of the size and location of one or more of said set of candidate face regions in association with said main acquired image. | *See exemplary disclosures cited above for Claim 1[pre], [1d].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 14 | |
| 14. A method as claimed in claim | *See exemplary disclosures cited above for Claim 1[pre], [1d], [1e].* |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent)**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| | |
|---|---|
| 1 further comprising performing spatially selective post processing of said main acquired image based on said stored candidate face regions' size or location. | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 15** | |
| 15. A method a claimed in claim 1, wherein said stream of reference images comprises a stream of preview images. | *See exemplary disclosures cited above for Claim 1[pre], [a], and Claims 10 and 11.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 26** | |
| 26. [pre] A method of detecting faces in a reference image stream using a digital image acquisition device comprising: | *See* Wong at pages 1-6.<br><br>*See exemplary disclosures cited above for Claim 1[pre].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent")**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| | |
|---|---|
| | obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [a] receiving a first acquired image from said reference image stream including one or more face regions; | *See exemplary disclosures cited above for Claim 1[pre], [a].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [26b] sub-sampling said first acquired image at a specified resolution one or more times to provide one or more sub-sampled images; | *See exemplary disclosures cited above for Claim 1[pre], [a], and Claims 10 and 11.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent)**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| | combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
|---|---|
| [26c] identifying one or more regions of said first acquired image including said one or more face regions within said one or more subsampled images of said first acquired image with probabilities each above a predetermined threshold; | *See exemplary disclosures cited above for Claim 1[b], [e].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [26d] determining a respective size and location of each identified face region within said first acquired image; | *See exemplary disclosures cited above for Claim 1[d].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent)**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| | |
|---|---|
| [26e] receiving a second acquired image from said reference image stream, and sub-sampling and applying face detection to one or more regions of said subsequent acquired image calculated as probably including one or more face regions corresponding to said one or more face regions identified in said first acquired image; | *See exemplary disclosures cited above for Claim 1[e].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [26f] acquiring a full resolution main image and applying image processing based on said face detection applied to said first and second images of said reference image stream | *See exemplary disclosures cited above for Claim 1[f].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [26g] displaying, storing, or transmitting the processed version of said main image, or combinations thereof. | *See exemplary disclosures cited above for Claim 1[g].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent")**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| | contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
|---|---|
| **CLAIM 27** | |
| 27. A method as claimed in claim 26 wherein said identifying is performed on said sub-sampled image. | *See exemplary disclosures cited above for Claim 26[b].* |
| | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 28** | |
| 28. A method as claimed in claim 26 wherein said face detection is performed with relaxed face detection parameters. | *See exemplary disclosures cited above for Claim 1[b]-[d].* |
| | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent")**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| | contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
|---|---|
| **CLAIM 29** | |
| 29. A method as claimed in claim 26 further comprising for a particular candidate face region associated with a previously acquired image of said image stream, enhancing a contrast of luminance characteristics of corresponding regions of said main image. | *See exemplary disclosures cited above for Claim 1[pre], [a]-[b].*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 30** | |
| 30. A method as claimed in claim 29 wherein said enhancing is performed on said sub-sampled image. | *See exemplary disclosures cited above for Claim 26[b] and Claim 29.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit H-32**
**Invalidity of U.S. Patent No. 7,620,218 (the "'218 Patent")**
**Due to "A Sum of Absolute Differences Implementation in FPGA Hardware," Wong et al., IEEE (published in 2002)**
**("Wong")**

| | |
|---|---|
| **CLAIM 32** | |
| 32. A method as claimed in claim 26, further comprising tracking candidate face regions of different parameters from a plurality of images of said image stream. | *See exemplary disclosures cited above for Claim 8.*<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| CLAIM 1 | |
| 1 [pre]. A method of acquiring an improved image based on tracking a face in a preview image stream with a digital image acquisition device, comprising programming a processor to perform the following: | Steinberg '695 at 2:30-43: "A method of tracking faces in an image stream with a digital image acquisition device is provided. An acquired image is received from an image stream including one or more face regions. The acquired image is sub-sampled at a specified resolution. A corresponding integral image is calculated for a least a portion of the Sub-Sampled image. Face detection is applied to at least a portion of the integral image to provide a set of one or more candidate face regions. A resolution is adjusted for Sub-Sampling a next acquired image. The above are repeated at the adjusted resolution periodically on selected images of an image stream including a main acquired image chronologically following multiple images of the selected images." |
|  | Steinberg '695 at 7:33-46: "A digital image is acquired in raw format from an image sensor (CCD or CMOS) [**105**] and an image sub-sampler [**112**] generates a smaller copy of the main image. Most digital cameras already contain dedicated hardware sub-systems to perform image Subsampling, for example to provide preview images to a camera display. Typically, the sub-sampled image is provided in bitmap format (RGB or YCC). In the meantime, the normal image acquisition chain performs post-processing on the raw image [**110**] which typically includes some luminance and color balancing. In certain digital imaging systems the Subsampling may occur after such post-processing, or after certain post-processing filters are applied, but before the entire post-processing filter chain is completed." |
|  | Steinberg '695 at 8:54-67: "The candidate region tracker [**290**] provides a set of confirmed face regions [**143**] based on full variable size face detection of the image patches to the face tracking module [**111**]. Clearly, some candidate regions will have been confirmed while others will have been rejected, and these can be explicitly returned by the tracker [**290**] or can be calculated by the tracking module [**111**] by analyzing the difference between the |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | confirmed regions [**143**] and the candidate regions [**142**]. In either case, the face tracking module [**111**] can then apply alternative tests to candidate regions rejected by the tracker [**290**] (as explained below) to determine whether these should be maintained as candidate regions [**142**] for the next cycle of tracking or whether these should indeed be removed from tracking."

Steinberg '695 at 11:44-52:
"Thus, when using real-time face tracking within a camera, on each frame of the preview stream a current probability for each face region can be available, together with a cumulative probability which is determined from a history of each face region across the previous N preview images. In normal situations the cumulative probability is relatively high, say 70%+, and the current probability would be of the same order with an error factor of, say -10%."

Steinberg '695 at 12:7-28:
"According to this aspect, when the current face probability of a tracked region experiences a drop in probability at a rate above a given threshold, one or more of the above mentioned enhancement Subsystems or indeed other Sub-systems are activated over the next few preview frames to determine if the change in acquisition conditions can be addressed. For example, if a face was already of a small size then the camera may auto-Zoom to increase the size of the face image, thus increasing the face region probability over the next few preview acquisitions. In cases where local illumination was low or contrast was poor (this can be determined from a histogram, or may be available from hardware) and the camera is equipped with external illumination devices, or a night-view mode, then these subsystems may be activated to determine if the face region probability improves. Other embodiments may use the conventional camera flash to initiate a timed sequence of micro-flashes to correspond with the acquisition of preview frames. These measures would typically be temporary (as they could deplete batteries if used over a prolonged period) and it may be desirable to provide user feed back through audio beeps, or otherwise to signify that face enhancements have been |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | activated."<br><br>Steinberg '695, Fig. 1:<br><br><br><br>Steinberg '695, Fig. 2: |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Figure 2  |
| | Steinberg '695, Fig. 3(a-d): |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| |  |
| | *See also, id.* at Abstract, 1:13-2:26, 2:30-4:43, 4:61-8:67, 9:1-13:67, 14:1-17:23, and Claims 1 and 41-44.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [1a] determining an initial location or size, or both, of a face in a first preview image of a preview image stream; | *See exemplary disclosures cited for Claim 1[pre].*<br><br>Steinberg '695, Fig. 1: |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| |  Steinberg '695, Fig. 2: |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Figure 2  |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | Steinberg '695, Fig. 3(a-d): |
|  |  |
|  | Steinberg '695 at 3:58-4:3: |
|  | "A further method is provided for detecting faces in an image stream using a digital image acquisition device. A first acquired image is received from the image stream including one or more face regions. Face detection is applied to at least a portion of the first acquired image to provide a set of one or more candidate face regions each having a probability of being a face region. Candidate face regions are tracked across multiple images of the image stream including the first acquired image. Responsive to a probability of a tracked face regions dropping by more than a threshold rate with respect to time, an enhancement Sub-System is activated for a period of time to improve the probability of the face detection detecting a candidate face region." |
|  | *See also, id.* at 2:30-43, 6:48-62, 14:50-61, and Claims 1 and 41-44. |
|  | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [1b] determining a subsequent location or size, or both, for the same face in a subsequent preview image; | *See exemplary disclosures cited for Claim 1[pre], [a].* <br><br> Steinberg '695, Fig. 1: <br><br>  <br><br> Steinberg '695, Fig. 2: |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | <br>Figure 2 |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | Steinberg '695, Fig. 3(a-d):<br><br><br><br>Steinberg '695 at 3:58-4:3:<br>"A further method is provided for detecting faces in an image stream using a digital image acquisition device. A first acquired image is received from the image stream including one or more face regions. Face detection is applied to at least a portion of the first acquired image to provide a set of one or more candidate face regions each having a probability of being a face region. Candidate face regions are tracked across multiple images of the image stream including the first acquired image. Responsive to a probability of a tracked face regions dropping by more than a threshold rate with respect to time, an enhancement Sub-System is activated for a period of time to improve the probability of the face detection detecting a candidate face region."<br><br>*See also, id.* at 2:30-43, 6:48-62, 14:50-61, and Claims 1, and 41-44.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [1c] based on the initial and subsequent locations or sizes, or combinations thereof, predicting a region of a third preview image which has just been acquired within which region the same face is expected to occur again; and | *See exemplary disclosures cited for Claim 1[a], [b].*<br><br>Steinberg '695 at 3:58-4:3:<br>"A further method is provided for detecting faces in an image stream using a digital image acquisition device. A first acquired image is received from the image stream including one or more face regions. Face detection is applied to at least a portion of the first acquired image to provide a set of one or more candidate face regions each having a probability of being a face region. Candidate face regions are tracked across multiple images of the image stream including the first acquired image. Responsive to a probability of a tracked face regions dropping by more than a threshold rate with respect to time, an enhancement Sub-System is activated for a period of time to improve the probability of the face detection detecting a candidate face region."<br><br>*See also, id. at* 4:4-4:43, 6:32-62, 11:18-12:50, 14:50-61, and Claims 1 and 41-44, 49-59.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [1d] analyzing one or more characteristics of said region of said third preview image; | *See exemplary disclosures cited for Claim 1[pre]-[b].*<br><br>Steinberg '695 at 3:9-15:<br>"Size or location, or both, of a candidate face region may be stored in association with the main acquired image. Spatially selective post processing of the main acquired image may be performed based on the stored candidate face region's size or location or both. The selective image processing includes any of color correction, sharpening, blurring, saturation, Subsampling, and/or compression."<br><br>Steinberg '695 at 3:58-4:21:<br>"A further method is provided for detecting faces in an image stream using a digital image acquisition device. A first acquired image is received from the image stream including one or more face regions. Face detection is applied to at least a portion of the first acquired image to provide a set of one or more candidate face regions each having a probability of being a face region. Candidate face regions are tracked across multiple images of the image stream including the first acquired image. Responsive to a probability of a tracked face regions dropping by more than a threshold rate with respect to time, an enhancement Sub-System is activated for a period of time to improve the probability of the face detection detecting a candidate face region.<br><br>The activating may include acquiring each new image of the image stream with a progressively increased exposure parameter until at least one candidate face region is detected with a probability above a given threshold.<br><br>The activating may include activating one or more of an LED, an infra-red LED, a visible light source, or a micro flash. Subsequently, one or more images of the image stream may be acquired until at least one candidate face region is detected with a probability above a given threshold. The activating may include changing an optical |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | filter. Subsequently, one or more images of the image stream may be acquired until at least one candidate face region is detected with a probability above a given threshold. <br><br> The activating may include activating a second image acquisition sensor. Subsequently, one or more images of the image stream may be acquired until at least one candidate face region is detected with a probability above a given threshold." <br><br> Steinberg '695 at 4:31-34: <br> "Prior to applying face detection for a candidate face region associated with a previous image, the contrast of the luminance characteristics of the corresponding region of the acquired image may be enhanced." <br><br> *See also, id. at* 10:39-67, 11:45-12:28, 12:7-50, 16:12-21, and Claims 1, 16-17, 41-44, and 54-55. <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [1e] based on the analyzing of the one or more characteristics of said region, adjusting one or more acquisition parameters of a main acquired image. | *See exemplary disclosures cited for Claim 1[pre], [a]-[d].* <br><br> Steinberg '695 at 3:9-15: <br> "Size or location, or both, of a candidate face region may be stored in association with the main acquired image. Spatially selective post processing of the main acquired |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | image may be performed based on the stored candidate face region's size or location or both. The selective image processing includes any of color correction, sharpening, blurring, saturation, Subsampling, and/or compression."

Steinberg '695 at 3:58-4:21:
"A further method is provided for detecting faces in an image stream using a digital image acquisition device. A first acquired image is received from the image stream including one or more face regions. Face detection is applied to at least a portion of the first acquired image to provide a set of one or more candidate face regions each having a probability of being a face region. Candidate face regions are tracked across multiple images of the image stream including the first acquired image. Responsive to a probability of a tracked face regions dropping by more than a threshold rate with respect to time, an enhancement Sub-System is activated for a period of time to improve the probability of the face detection detecting a candidate face region.

The activating may include acquiring each new image of the image stream with a progressively increased exposure parameter until at least one candidate face region is detected with a probability above a given threshold.

The activating may include activating one or more of an LED, an infra-red LED, a visible light source, or a micro flash. Subsequently, one or more images of the image stream may be acquired until at least one candidate face region is detected with a probability above a given threshold. The activating may include changing an optical filter. Subsequently, one or more images of the image stream may be acquired until at least one candidate face region is detected with a probability above a given threshold.

The activating may include activating a second image acquisition sensor. Subsequently, one or more images of the image stream may be acquired until at least one candidate face region is detected with a probability above a given threshold." |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Steinberg '695 at 4:31-34: <br><br> "Prior to applying face detection for a candidate face region associated with a previous image, the contrast of the luminance characteristics of the corresponding region of the acquired image may be enhanced." <br><br> *See also, id. at* 10:39-67, 12:7-50, 16:12-21, and Claims 1, 16-17, 41-44, and 54-55. <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 2** | |
| The method of claim 1, wherein said one or more acquisition parameters include white balance, color balance, focus, or exposure, or combinations thereof. | *See exemplary disclosures cited for Claim 1[d], [e].* <br><br> Steinberg '695 at 4:31-34: <br><br> "Prior to applying face detection for a candidate face region associated with a previous image, the contrast of the luminance characteristics of the corresponding region of the acquired image may be enhanced." <br><br> *See also, id. at* 10:39-67. <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 3** | |
| The method of claim 1 wherein said one or more characteristics of said region include sharpness, luminance, texture, color histogram, luminance histogram, horizontal luminance profile, vertical luminance profile, horizontal chrominance profile, vertical chrominance profile, or region correlogram, or combinations thereof. | *See exemplary disclosures cited for Claim 2.*<br><br>*See also, id. at* 3:4-15, 7:32-46, 10: 9-67.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 4** | |
| The method of claim 1, where the preview and main acquired images comprise different resolutions. | *See exemplary disclosures cited for Claim 1[pre], [a].* |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | Steinberg '695, Fig. 1:<br><br><br><br>Steinberg '695, Fig. 2: |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| |  Figure 2 <br><br> Steinberg '695 at 2:30-43: <br> "A method of tracking faces in an image stream with a digital image acquisition device is provided. An acquired image is received from an image stream including one or |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | more face regions. The acquired image is sub-sampled at a specified resolution. A corresponding integral image is calculated for a least a portion of the Sub-Sampled image. Face detection is applied to at least a portion of the integral image to provide a set of one or more candidate face regions. A resolution is adjusted for Sub-Sampling a next acquired image. The above are repeated at the adjusted resolution periodically on selected images of an image stream including a main acquired image chronologically following multiple images of the selected images."<br><br>Steinberg '695 at 3:4-8:<br>"The adjusting may include cycling through a set of at least approximately four Sub-sampling resolutions. The adjusting may be responsive to the image being acquired at approximately infinite focus for adjusting the Sub-sampling resolution to maximum resolution."<br><br>Steinberg '695 at 4:22-30:<br>"The application of face detection may include sub-sampling the acquired image at a specified resolution to provide a sub-sampled image. One or more regions of the acquired image may be identified predominantly including skin tone. A corresponding integral image may be calculated for a least one of the skin tone regions of the sub-sampled acquired image. Face detection may be applied to a portion or more of the integral image. The identifying may be performed on the sub-sampled image."<br><br>Steinberg '695 at 5:1-14:<br>"A first method is provided for tracking faces in an image stream with a digital image acquisition device. An acquired image is received from an image stream including one or more face regions. The acquired image is sub-sampled at a specified resolution to provide a sub-sampled image. A corresponding integral image is calculated for a least a portion of the sub-sampled image. A fixed size face detection is applied to at least a portion of the integral image to provide a set of one or more candidate face regions each having a given size and a respective location. Responsive to the given size and respective location of the candidate face regions, and optionally including one or more |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | previously detected face regions, adjusting a resolution at which a next acquired image is sub-sampled."<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 5** |  |
| 5 [pre]. A method of tracking faces in a preview image stream with a digital image acquisition device, comprising programming a processor to perform the following | *See exemplary disclosures cited for Claim 1[pre].*<br><br>Steinberg '695 at 2:30-43:<br>"A method of tracking faces in an image stream with a digital image acquisition device is provided. An acquired image is received from an image stream including one or more face regions. The acquired image is sub-sampled at a specified resolution. A corresponding integral image is calculated for a least a portion of the Sub-Sampled image. Face detection is applied to at least a portion of the integral image to provide a set of one or more candidate face regions. A resolution is adjusted for Sub-Sampling a next acquired image. The above are repeated at the adjusted resolution periodically on selected images of an image stream including a main acquired image chronologically following multiple images of the selected images."<br><br>Steinberg '695 at 4:61-67:<br>"Methods are provided for detecting, tracking or recognizing faces, or combinations thereof, within acquired digital images of an image stream. An image processing |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | apparatus is also provided including one or more processors and one or more digital storage media having digitally-encoded instructions embedded therein for programming the one or more processors to perform any of these methods."<br><br>Steinberg '695 at 7:33-46:<br>"A digital image is acquired in raw format from an image sensor (CCD or CMOS) [**105**] and an image sub-sampler [**112**] generates a smaller copy of the main image. Most digital cameras already contain dedicated hardware sub-systems to perform image Subsampling, for example to provide preview images to a camera display. Typically, the sub-sampled image is provided in bitmap format (RGB or YCC). In the meantime, the normal image acquisition chain performs post-processing on the raw image [**110**] which typically includes some luminance and color balancing. In certain digital imaging systems the Subsampling may occur after such post-processing, or after certain post-processing filters are applied, but before the entire post-processing filter chain is completed."<br><br><br>Steinberg '695 at 8:54-67:<br>"The candidate region tracker [**290**] provides a set of confirmed face regions [**143**] based on full variable size face detection of the image patches to the face tracking module [**111**]. Clearly, some candidate regions will have been confirmed while others will have been rejected, and these can be explicitly returned by the tracker [**290**] or can be calculated by the tracking module [**111**] by analyzing the difference between the confirmed regions [**143**] and the candidate regions [**142**]. In either case, the face tracking module [**111**] can then apply alternative tests to candidate regions rejected by the tracker [**290**] (as explained below) to determine whether these should be maintained as candidate regions [**142**] for the next cycle of tracking or whether these should indeed be removed from tracking." |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | Steinberg '695 at 11:44-52:<br>"Thus, when using real-time face tracking within a camera, on each frame of the preview stream a current probability for each face region can be available, together with a cumulative probability which is determined from a history of each face region across the previous N preview images. In normal situations the cumulative probability is relatively high, say 70%+, and the current probability would be of the same order with an error factor of, say -10%."<br><br>Steinberg '695 at 12:7-28:<br>"According to this aspect, when the current face probability of a tracked region experiences a drop in probability at a rate above a given threshold, one or more of the above mentioned enhancement Subsystems or indeed other Sub-systems are activated over the next few preview frames to determine if the change in acquisition conditions can be addressed. For example, if a face was already of a small size then the camera may auto-Zoom to increase the size of the face image, thus increasing the face region probability over the next few preview acquisitions. In cases where local illumination was low<br>or contrast was poor (this can be determined from a histogram, or may be available from hardware) and the camera is equipped with external illumination devices, or a night-view mode, then these subsystems may be activated to determine if the face region probability improves. Other embodiments may use the conventional camera flash to initiate a timed sequence of micro-flashes to correspond with the acquisition of preview frames. These measures would typically be temporary (as they could deplete batteries if used over a prolonged period) and it may be desirable to provide user feed back through audio beeps, or otherwise to signify that face enhancements have been activated." |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Steinberg '695, Fig. 1:<br><br><br><br>Steinberg '695, Fig. 2: |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Figure 2 |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Steinberg '695, Fig. 3(a-d):<br><br><br><br>See also, id. at Abstract, 1:13-2:26, 2:30-4:43, 4:61-8:67, 9:1-13:67, 14:1-17:23, and Claims 1 and 41-44.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [5a] receiving digital images from a | *See exemplary disclosures cited for Claim 1[pre], [a].* |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| preview image stream including faces; | Steinberg '695 at 7:33-46: <br> "A digital image is acquired in raw format from an image sensor (CCD or CMOS) [**105**] and an image sub-sampler [**112**] generates a smaller copy of the main image. Most digital cameras already contain dedicated hardware sub-systems to perform image Subsampling, for example to provide preview images to a camera display. Typically, the sub-sampled image is provided in bitmap format (RGB or YCC). In the meantime, the normal image acquisition chain performs post-processing on the raw image [**110**] which typically includes some luminance and color balancing. In certain digital imaging systems the Subsampling may occur after such post-processing, or after certain post-processing filters are applied, but before the entire post-processing filter chain is completed." <br><br> Steinberg '695 at 5:1-14: <br> "A first method is provided for tracking faces in an image stream with a digital image acquisition device. An acquired image is received from an image stream including one or more face regions. The acquired image is sub-sampled at a specified resolution to provide a sub-sampled image. A corresponding integral image is calculated for a least a portion of the sub-sampled image. A fixed size face detection is applied to at least a portion of the integral image to provide a set of one or more candidate face regions each having a given size and a respective location. Responsive to the given size and respective location of the candidate face regions, and optionally including one or more previously detected face regions, adjusting a resolution at which a next acquired image is sub-sampled." <br><br> *See also, id.* Figs. 1-3, 2:30-43, 6:12-41, 12:60-13:23, and Claim 1. <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [5b] calculating corresponding integral images for the digital images; | *See exemplary disclosures cited for Claim 1[pre], [a].*<br><br>Steinberg '695, Fig. 1:<br><br><br><br>Steinberg '695, Fig. 2: |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Figure 2 <br><br>Steinberg '695, Fig. 3(a-d): |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| |  Fig 3(a) Fig 3(b) Fig 3(c) Fig 3(d)<br><br>Steinberg '695 at 7:47-56:<br>"The subsampled image is next passed to an integral image generator [**115**] which creates an integral image from the Subsampled image. This integral image is next passed to a fixed size face detector [**120**]. The face detector is applied to the full integral image, but as this is an integral image of a subsampled copy of the main image, the processing involved in the face detection is proportionately reduced. If the subsampled image is ¼ of the main image, e.g., has ¼ the number of pixels and/or ¼ the size, then the processing time involved is only about 25% of that for the full image."<br><br>Steinberg '695 at 5:1-14:<br>"A first method is provided for tracking faces in an image stream with a digital image acquisition device. An acquired image is received from an image stream including one or more face regions. The acquired image is sub-sampled at a specified resolution to provide a sub-sampled image. A corresponding integral image is calculated for a least a portion of the sub-sampled image. A fixed size face detection is applied to at least a portion of the integral image to provide a set of one or more candidate face regions each having a given size and a respective location. Responsive to the given size and |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | respective location of the candidate face regions, and optionally including one or more previously detected face regions, adjusting a resolution at which a next acquired image is sub-sampled." <br><br> Steinberg '695 at 5:25-32: <br> "In certain embodiments, when implemented in an image acquisition device during face detection, a subsampled copy of an acquired image may be extracted from the camera hardware image acquisition Subsystem and the integral image may be calculated for this Subsampled image. During face tracking, the integral image may be calculated for an image patch Surrounding each candidate region, rather than the entire image." <br><br> *See also, id.* at Abstract, 1:19-3:3, 3:25-7:64, 8:15-10:67, 12:60-14:26, 15:5-36, and Claim 1. <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [5c] applying different subsets of face detection windows to different subsets of the integral images to provide different sets of candidate face regions of different sizes or locations or both within the digital | *See exemplary disclosures cited for Claim 1[pre], [a] and Claim 5[a]-[b].* <br><br> Steinberg '695 at 5:55-65: <br> "By varying the resolution/scale of the sub-sampled image which is in turn used to produce the integral image, a single fixed size of classifier can be applied to the |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| images; and | different sizes of integral image. Such an approach is particularly amenable to hardware embodiments where the subsampled image memory space can be scanned by a fixed size direct memory access (DMA) window and digital logic to implement a Haar-feature classifier chain can be applied to this DMA window. However, it will be seen that several sizes of classifier (in a software embodiment), or multiple fixed-size classifiers (in a hardware embodiment) could also be used."<br><br>Steinberg '695 at 7:47-56:<br>"The subsampled image is next passed to an integral image generator [**115**] which creates an integral image from the Subsampled image. This integral image is next passed to a fixed size face detector [**120**]. The face detector is applied to the full integral image, but as this is an integral image of a subsampled copy of the main image, the processing involved in the face detection is proportionately reduced. If the subsampled image is ¼ of the main image, e.g., has ¼ the number of pixels and/or ¼ the size, then the processing time involved is only about 25% of that for the full image."<br><br>Steinberg '695 at 7:57-64:<br>"This approach is particularly amenable to hardware embodiments where the Subsampled image memory space can be scanned by a fixed size DMA window and digital logic to implement a Haar-feature classifier chain can be applied to this DMA window. Several sizes of classifiers may alternatively be used (in a software embodiment), or multiple fixed size classifiers may be used (in a hardware embodiment). An advantage is that a smaller integral image is calculated."<br><br>Steinberg '695 at 7:65-8:3:<br>"After application of the fast face detector [**280**] any newly detected candidate face regions [**141**] are passed onto a face tracking module [**111**] where any face regions confirmed from previous analysis [**145**] may be merged with new candidate face regions prior to being provided [**142**] to a face tracker [**290**]." |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | Steinberg '695 at 14:17-36: <br> "The face detector [**280**] also need not run at regular intervals. So for example, if the camera focus is changed significantly, then the face detector may be run more frequently and particularly with differing scales of Sub-Sampled images to try to detect faces which should be changing in size. Alternatively, where focus is changing rapidly, the detector [**280**] could be skipped for intervening frames, until focus has stabilized. However, it is generally when focus goes to approximately infinity that the highest resolution integral image is to be produced by the generator [**115**]. <br><br> In this latter case, the detector may not be able to cover the entire area of the acquired. Subsampled, image in a single frame. Accordingly the detector may be applied across only a portion of the acquired, Subsampled, image on a first frame, and across the remaining portion(s) of the image on one or more subsequent acquired image frames. In a one embodiment, the detector is applied to the outer regions of the acquired image on a first acquired image frame in order to catch small faces entering the image from its periphery, and on subsequent frames to more central regions of the image." <br><br> Steinberg '695 at 5:1-14: <br> "A first method is provided for tracking faces in an image stream with a digital image acquisition device. An acquired image is received from an image stream including one or more face regions. The acquired image is sub-sampled at a specified resolution to provide a sub-sampled image. A corresponding integral image is calculated for a least a portion of the sub-sampled image. A fixed size face detection is applied to at least a portion of the integral image to provide a set of one or more candidate face regions each having a given size and a respective location. Responsive to the given size and respective location of the candidate face regions, and optionally including one or more previously detected face regions, adjusting a resolution at which a next acquired image is sub-sampled." <br><br> Steinberg '695 at 5:25-32: <br> "In certain embodiments, when implemented in an image acquisition device during |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | face detection, a subsampled copy of an acquired image may be extracted from the camera hardware image acquisition Subsystem and the integral image may be calculated for this Subsampled image. During face tracking, the integral image may be calculated for an image patch surrounding each candidate region, rather than the entire image." <br><br> Steinberg '695 at 6:1-7: <br> "A full resolution image patch surrounding each candidate face region may be acquired prior to the acquisition of the next image frame. An integral image may then be calculated for each such image patch and a multi-scaled face detector may be applied to each such image patch. Regions which are found by the multi-scaled face detector to be face regions are referred to as confirmed face regions." <br><br> *See also, id.* Figs. 1-3, 1:14-2:26, 2:30-43, 8:15-53, 11:33-57, 12:60-13:55, 14:62-15:51, and Claim 1. <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [5d] tracking each of the different candidate face regions within further images of the image stream or a main target image with which said preview image | *See exemplary disclosures cited for Claim 1[pre], [a], [c] and Claim 5[c].* <br><br> Steinberg '695, Fig. 1: |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| stream is utilized, or both. | <br>Steinberg '695, Fig. 2: |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | <br>Figure 2 |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Steinberg '695, Fig. 3(a-d):  Steinberg '695 at 8:54-67: "The candidate region tracker [**290**] provides a set of confirmed face regions [**143**] based on full variable size face detection of the image patches to the face tracking module [**111**]. Clearly, some candidate regions will have been confirmed while others will have been rejected, and these can be explicitly returned by the tracker [**290**] or can be calculated by the tracking module [**111**] by analyzing the difference between the confirmed regions [**143**] and the candidate regions [**142**]. In either case, the face tracking module [**111**] can then apply alternative tests to candidate regions rejected by the tracker [**290**] (as explained below) to determine whether these should be maintained as candidate regions [**142**] for the next cycle of tracking or whether these should indeed be removed from tracking." *See also, id.* at 2:30-43, 12:60-13:23, and Claim 1. To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 6** |  |
| The method of claim 5, further comprising merging said different sets of candidate face regions to provide a merged set of candidate face regions of different sizes or locations or both. | *See exemplary disclosures cited for Claim 1[pre]-[b] and Claim 5[c]-[d].*<br><br>Steinberg '695, Fig. 2: |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Figure 2<br><br>Steinberg '695 at 13:24-27:<br>"The set of candidate regions [**141**] is merged with the existing set of confirmed regions [**145**] to produce a merged set of candidate regions [**142**] to be provided for confirmation at Step **242**." |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Steinberg '695 at 2:46-3:3:<br>"The set of candidate face regions may be merged with a previously detected face region to provide a set of candidate face regions of different sizes. For each region of the acquired image corresponding to a region of merged set of candidate face regions, an integral image may be calculated and a variable-sized face detection may be applied to each merged region integral image to provide a set of confirmed face regions and a set of rejected face regions. A rejected face region may be checked based on alternative criteria from the variable sized face detection. Responsive to the checking, a rejected face region may be indicated as a face region, and the previously rejected face region may be added to the set of confirmed face regions. The checking may include applying a skin prototype to the rejected face region. The merging may include merging a set of candidate face regions for an acquired image with the set of confirmed face regions for a previously acquired image. The regions of the acquired image corresponding to a region of the merged set of candidate face regions may include regions surrounding respective regions of the merged set of candidate face regions. Variable sized face detection may be applied including applying multiple cascades of Haar classifiers of varying size to each merged region integral image. Twelve or fewer sizes of cascades of Haar classifiers, such as 3 or 4, may be applied. Each cascade may include 32 classifiers."<br><br>Steinberg '695 at 5:1-14:<br>"A first method is provided for tracking faces in an image stream with a digital image acquisition device. An acquired image is received from an image stream including one or more face regions. The acquired image is sub-sampled at a specified resolution to provide a Sub-Sampled image. A corresponding integral image is calculated for at least a portion of the sub-sampled image. A fixed size face detection is applied to at least a portion of the integral image to provide a set of one or more candidate face regions each having a given size and a respective location. Responsive to the given size and respective location of the candidate face regions, and optionally including one or more previously detected face regions, adjusting a resolution at which a next acquired image |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | is sub-sampled."<br><br>*See also, id.* at 2:30-3:3, 7:65-8:25, 9:8-17, 13:9-14:8, 15:10-67, and Claims 3 and 7.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 7** | |
| The method of claim 5, further comprising merging said different sets of candidate face regions with at least one previously detected face region to provide a merged set of candidate face regions of different sizes or locations or both. | *See exemplary disclosures cited for Claim 1[pre]-[b], Claim 5[c]-[d], and Claim 6.*<br><br>Steinberg '695, Fig. 2: |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| |  Figure 2 <br><br> Steinberg '695 at 13:24-27: <br> "The set of candidate regions [**141**] is merged with the existing set of confirmed regions [**145**] to produce a merged set of candidate regions [**142**] to be provided for confirmation at Step **242**." |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Steinberg '695 at 2:46-3:3: "The set of candidate face regions may be merged with a previously detected face region to provide a set of candidate face regions of different sizes. For each region of the acquired image corresponding to a region of merged set of candidate face regions, an integral image may be calculated and a variable-sized face detection may be applied to each merged region integral image to provide a set of confirmed face regions and a set of rejected face regions. A rejected face region may be checked based on alternative criteria from the variable sized face detection. Responsive to the checking, a rejected face region may be indicated as a face region, and the previously rejected face region may be added to the set of confirmed face regions. The checking may include applying a skin prototype to the rejected face region. The merging may include merging a set of candidate face regions for an acquired image with the set of confirmed face regions for a previously acquired image. The regions of the acquired image corresponding to a region of the merged set of candidate face regions may include regions surrounding respective regions of the merged set of candidate face regions. Variable sized face detection may be applied including applying multiple cascades of Haar classifiers of varying size to each merged region integral image. Twelve or fewer sizes of cascades of Haar classifiers, such as 3 or 4, may be applied. Each cascade may include 32 classifiers." *See also, id.* at 9:8-17, 15:10-67, and Claims 3 and 7. To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 8** | |
| The method of claim 7, further comprising applying variable-sized face detection to one or more face regions of said merged set of candidate face regions to provide a set of confirmed face regions and a set of rejected face regions. | *See exemplary disclosures cited for Claim 1[a], Claim 5[b]-[d], and Claims 6-7.*<br><br>Steinberg '695 at 8:15-27:<br>"After the main image acquisition chain is completed a full-size copy of the main image [**130**] will normally reside in the system memory [**140**] of the image acquisition system. This may be accessed by a candidate region extractor [**125**] component of the face tracker [**290**] which selects image patches based on candidate face region data [**142**] obtained from the face tracking module [**111**]. These image patches for each candidate region are passed to an integral image generator [**115**] which passes the resulting integral images to a variable sized detector [**121**], as one possible example a VJ detector, which then applies a classifier chain, preferably at least a 32 classifier chain, to the integral image for each candidate region across a range of different scales."<br><br>Steinberg '695 at 8:54-67:<br>"The candidate region tracker [**290**] provides a set of confirmed face regions [**143**] based on full variable size face detection of the image patches to the face tracking module [**111**]. Clearly, some candidate regions will have been confirmed while others will have been rejected, and these can be explicitly returned by the tracker [**290**] or can be calculated by the tracking module [**111**] by analyzing the difference between the confirmed regions [**143**] and the candidate regions [**142**]. In either case, the face tracking module [**111**] can then apply alternative tests to candidate regions rejected by the tracker [**290**] (as explained below) to determine whether these should be maintained as candidate regions [**142**] for the next cycle of tracking or whether these should indeed be removed from tracking." |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | Steinberg '695 at 2:46-3:3: <br> "The set of candidate face regions may be merged with a previously detected face region to provide a set of candidate face regions of different sizes. For each region of the acquired image corresponding to a region of merged set of candidate face regions, an integral image may be calculated and a variable-sized face detection may be applied to each merged region integral image to provide a set of confirmed face regions and a set of rejected face regions. A rejected face region may be checked based on alternative criteria from the variable sized face detection. Responsive to the checking, a rejected face region may be indicated as a face region, and the previously rejected face region may be added to the set of confirmed face regions. The checking may include applying a skin prototype to the rejected face region. The merging may include merging a set of candidate face regions for an acquired image with the set of confirmed face regions for a previously acquired image. The regions of the acquired image corresponding to a region of the merged set of candidate face regions may include regions Surrounding respective regions of the merged set of candidate face regions. Variable sized face detection may be applied including applying multiple cascades of Haar classifiers of varying size to each merged region integral image. Twelve or fewer sizes of cascades of Haar classifiers, such as 3 or 4, may be applied. Each cascade may include 32 classifiers." <br><br> See *also, id.* Fig. 3, 1:14-2:26, 2:30-3:25, 8:4-67, 11:18-31, 13:28-37, 15:37-51, and Claim 4. <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 9** | |
| The method of claim 8, wherein applying variable sized face detection comprises applying a plurality of cascades of Haar classifiers of varying size to integral images of face candidate regions of said merged set. | *See exemplary disclosures cited for Claim 1[a], Claim 5[pre], [a]-[d], and Claims 6-8.*<br><br>Steinberg '695 at 2:46-3:3:<br>"The set of candidate face regions may be merged with a previously detected face region to provide a set of candidate face regions of different sizes. For each region of the acquired image corresponding to a region of merged set of candidate face regions, an integral image may be calculated and a variable-sized face detection may be applied to each merged region integral image to provide a set of confirmed face regions and a set of rejected face regions. A rejected face region may be checked based on alternative criteria from the variable sized face detection. Responsive to the checking, a rejected face region may be indicated as a face region, and the previously rejected face region may be added to the set of confirmed face regions. The checking may include applying a skin prototype to the rejected face region. The merging may include merging a set of candidate face regions for an acquired image with the set of confirmed face regions for a previously acquired image. The regions of the acquired image corresponding to a region of the merged set of candidate face regions may include regions Surrounding respective regions of the merged set of candidate face regions. Variable sized face detection may be applied including applying multiple cascades of Haar classifiers of varying size to each merged region integral image. Twelve or fewer sizes of cascades of Haar classifiers, such as 3 or 4, may be applied. Each cascade may include 32 classifiers."<br><br>See also, id. Fig. 3, at 8:28-53, 15:10-67, and Claims 9-11.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 10** | |
| The method of claim 8, wherein said applying said different subsets of face detection windows comprises applying fixed-size face detection. | *See exemplary disclosures cited for Claim 1[a], Claim 5[pre], [a]-[d], and Claims 6-8.*<br><br>Steinberg '695, Fig. 1:<br><br> |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| Figure 2 | <u>Steinberg '695, Fig. 2</u>:<br><br><u>Steinberg '695 at 5:55-65</u>:<br>"By varying the resolution/scale of the sub-sampled image which is in turn used to produce the integral image, a single fixed size of classifier can be applied to the |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | different sizes of integral image. Such an approach is particularly amenable to hardware embodiments where the subsampled image memory space can be scanned by a fixed size direct memory access (DMA) window and digital logic to implement a Haar- feature classifier chain can be applied to this DMA window. However, it will be seen that several sizes of classifier (in a software embodiment), or multiple fixed-size classifiers (in a hardware embodiment) could also be used." <br><br> Steinberg '695 at 3:16-18: <br> "The face detection may include a fixed size, and wherein said one or more candidate face regions each have a given size and respective location." <br><br> See also, id. Fig. 3, at 2:30-3:31, 5:1-65, 7:24-8:53, 15:10-67, and Claim 18. <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 11** | |
| The method of claim 10, further comprising: checking a rejected face region based on alternative criteria from said fixed and variable sized face detection; and responsive to said checking, indicating that the rejected face region is a face region, | *See exemplary disclosures cited for Claim 1[a], Claim 5[pre], [a]-[d], and Claims 6-8.* <br><br> Steinberg '695 at 2:46-3:3: <br> "The set of candidate face regions may be merged with a previously detected face region to provide a set of candidate face regions of different sizes. For each region of the acquired image corresponding to a region of merged set of candidate face regions, |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| and adding said previously rejected face region to said set of confirmed face regions. | an integral image may be calculated and a variable-sized face detection may be applied to each merged region integral image to provide a set of confirmed face regions and a set of rejected face regions. A rejected face region may be checked based on alternative criteria from the variable sized face detection. Responsive to the checking, a rejected face region may be indicated as a face region, and the previously rejected face region may be added to the set of confirmed face regions. The checking may include applying a skin prototype to the rejected face region. The merging may include merging a set of candidate face regions for an acquired image with the set of confirmed face regions for a previously acquired image. The regions of the acquired image corresponding to a region of the merged set of candidate face regions may include regions Surrounding respective regions of the merged set of candidate face regions. Variable sized face detection may be applied including applying multiple cascades of Haar classifiers of varying size to each merged region integral image. Twelve or fewer sizes of cascades of Haar classifiers, such as 3 or 4, may be applied. Each cascade may include 32 classifiers." <br><br> *See also, id.* Fig. 3 and Claim 5. <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| CLAIM 12 | |
| The method of claim 10, wherein said applying fixed size face detection comprises applying a cascade of Haar classifiers of a fixed size to integral images of face candidate regions of said merged set. | *See exemplary disclosures cited for Claim 1[a], Claim 5[b]-[d], and Claims 6-10.*<br><br>Steinberg '695 at 3:28-30:<br>"The application of face detection comprises applying a cascade of Haar classifiers of a fixed size to said integral image."<br><br>See also, id. Figs. 1-3, at 8:28-53, 15:10-67, and Claim 25.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of these other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 13 | |
| The method of claim 5, wherein said face detection windows comprise rectangles. | *See exemplary disclosures cited for Claim 1[a], Claim 5[b], Claim 6, and Claim 9.*<br><br>Steinberg '695, Fig. 3(a-d): |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| |  |
| | Steinberg '695 at 14:62-15:4: |
| | "FIG. **3** illustrates operation in accordance with a preferred embodiment through a worked example. FIG.**3**(*a*) illustrates a result at the end of a detection and tracking cycle on a frame of video, with two confirmed face regions [**301**, **302**] of different scales being shown. In this exemplary embodiment, for pragmatic reasons, each face region has a rectangular bounding box. Although it is easier to make computations on rectangular regions, different shapes can be used. This information is recorded and output as [**145**] by the tracking module [**111**] of FIG. **1**." |
| | *See also id.* at 1:19-2:26, 11:17-3:31, 13:24-43. |
| | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 14** | |
| [14pre] The method of claim 5, further comprising: | *See exemplary disclosures cited for Claim 5.* |
| [14a] determining locations or sizes, or combinations thereof, of a same face within multiple preview images; | *See exemplary disclosures cited for Claim 1[pre], [a], [b].*<br><br>Steinberg '695 at 16:30-57:<br>"Other post-processing which can be used in conjunction with light-weight face detection is face recognition. In particular, such an approach can be useful when combined with more robust face detection and recognition either running on the same device or an off-line device that has sufficient resources to run more resource-consuming algorithms.<br><br>In this case, the face tracking module [**111**] reports the locations of confirmed face regions [**145**] to the in-camera firmware, preferably together with a confidence factor. When the confidence factor is sufficiently high for a region, indicating that at least one face is in fact present in an image frame, the camera firmware runs a light-weight face recognition algorithm [**160**] at the location of the face, for example a DCT-based algorithm. The face recognition algorithm [**160**] uses a database [**161**] preferably stored on the camera comprising personal identifiers and their associated face parameters.<br><br>In operation, the module [**160**] collects identifiers over a series of frames. When the identifiers of a detected face tracked over a number of preview frames are predominantly of one particular person, that person is deemed by the recognition module to be present in the image. The identifier of the person, and the last known location of the face, is stored either in the image (in a header) or in a separate file stored on the camera storage [**150**]. This storing of the person's ID can occur even when a recognition module [**160**] fails for the immediately previous number of frames, |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | but for which a face region was still detected and tracked by the module [**111**]." |
| | |
| | Steinberg '695 at 2:30-43: |
| | "A method of tracking faces in an image stream with a digital image acquisition device is provided. An acquired image is received from an image stream including one or more face regions. The acquired image is sub-sampled at a specified resolution. A corresponding integral image is calculated for a least a portion of the Sub-Sampled image. Face detection is applied to at least a portion of the integral image to provide a set of one or more candidate face regions. A resolution is adjusted for Sub-Sampling a next acquired image. The above are repeated at the adjusted resolution periodically on selected images of an image stream including a main acquired image chronologically following multiple images of the selected images." |
| | |
| | Steinberg '695 at 5:34-43: |
| | "In such an implementation, the process of face detection may be spread across multiple frames. This approach is advantageous for effective implementation. In one example, digital image acquisition hardware is designed to subsample to a single size. This aspect takes advantage of the fact that when composing a picture, a face will typically be present for multiple frames within video sequences. Significant improvements in efficiency are provided, while the reduction in computation does not impact very significantly on the initial detection of faces." |
| | |
| | *See also, id. at* 6:48-62, 14:50-61, and Claims 1, 2, and 41-44. |
| | |
| | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [14b] based on the determining, predicting a region of a further preview image which has just been acquired within which region the same face is expected to occur again; | *See exemplary disclosures cited for Claim 1[pre], [a]-[c].*<br><br>Steinberg '695 at 5:34-43:<br>"In such an implementation, the process of face detection may be spread across multiple frames. This approach is advantageous for effective implementation. In one example, digital image acquisition hardware is designed to subsample to a single size. This aspect takes advantage of the fact that when composing a picture, a face will typically be present for multiple frames within video sequences. Significant improvements in efficiency are provided, while the reduction in computation does not impact very significantly on the initial detection of faces."<br><br>*See also, id. at* 6:48-62, 14:50-61, and Claims 1 and 41-44.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [14c] analyzing one or more characteristics of said region of said third preview image; and | *See exemplary disclosures cited for Claim 1[d].*<br><br>Steinberg '695 at 3:58-4:3: |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | "A further method is provided for detecting faces in an image stream using a digital image acquisition device. A first acquired image is received from the image stream including one or more face regions. Face detection is applied to at least a portion of the first acquired image to provide a set of one or more candidate face regions each having a probability of being a face region. Candidate face regions are tracked across multiple images of the image stream including the first acquired image. Responsive to a probability of a tracked face regions dropping by more than a threshold rate with respect to time, an enhancement sub-system is activated for a period of time to improve the probability of the face detection detecting a candidate face region."<br><br>*See also, id. at* 10:39-67, 11:45-12:6, 14:50-61, and Claims 1 and 41-44.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [14d] based on the analyzing, adjusting one or more acquisition parameters of a main acquired image. | *See exemplary disclosures cited above for claim 1, [pre], [d], [e].*<br><br>Steinberg '695 at 3:9-15:<br>"Size or location, or both, of a candidate face region may be stored in association with the main acquired image. Spatially selective post processing of the main acquired image may be performed based on the stored candidate face region's size or location or both. The selective image processing includes any of color correction, sharpening, blurring, saturation, subsampling, and/or compression." |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | Steinberg '695 at 3:58-4:21: <br> "A further method is provided for detecting faces in an image stream using a digital image acquisition device. A first acquired image is received from the image stream including one or more face regions. Face detection is applied to at least a portion of the first acquired image to provide a set of one or more candidate face regions each having a probability of being a face region. Candidate face regions are tracked across multiple images of the image stream including the first acquired image. Responsive to a probability of a tracked face regions dropping by more than a threshold rate with respect to time, an enhancement sub-system is activated for a period of time to improve the probability of the face detection detecting a candidate face region. <br><br> The activating may include acquiring each new image of the image stream with a progressively increased exposure parameter until at least one candidate face region is detected with a probability above a given threshold. <br><br> The activating may include activating one or more of an LED, an infra-red LED, a visible light source, or a micro flash. Subsequently, one or more images of the image stream may be acquired until at least one candidate face region is detected with a probability above a given threshold. <br><br> The activating may include changing an optical filter. Subsequently, one or more images of the image stream may be acquired until at least one candidate face region is detected with a probability above a given threshold. <br><br> The activating may include activating a second image acquisition sensor. Subsequently, one or more images of the image stream may be acquired until at least one candidate face region is detected with a probability above a given threshold." <br><br> Steinberg '695 at 4:31-34: <br> "Prior to applying face detection for a candidate face region associated with a previous |

**Exhibit I-40**
**Invalidity of U.S. Patent No. 7,916,897 (the "'897 Patent")**
**Due to U.S. Patent No. 7,460,695 ("Steinberg '695")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | image, the contrast of the luminance characteristics of the corresponding region of the acquired image may be enhanced."<br><br>*See also, id. at* 10:39-67, 12:7-50, 16:12-21, Claims 1, 16-17, 41-44, and 54-55.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| CLAIM 1 | |
| 1. [pre] A method of identifying a face image within a digital image by detecting and tracking a face image within a stream of images using skin tone information, comprising: | To the extent the preamble is limiting, this reference discloses a method of identifying a face image within a digital image by detecting and tracking a face image within a stream of images using skin tone information, based upon at least the following exemplary citations:

*See, e.g.,* Wolff at cover:
"The correction of the skin points takes place by displaying the color tone of these points in the color space in the direction of a predetermined, cohesive, ideal skin color quantity."

Wolff at [0010]:
"For this reason, it is more advantageous to verify the image points which are marked as possible skin points based on their skin color by using a further verification criterion. Here, so called facial recognition processes can be used in a particularly advantageous manner. Such processes are known, for example, from the field of red eye correction. Examples of such processes are described in EP 1 293 933 A1. Some of the known facial recognition processes operate using example faces which are compared to objects that are present in the image. Others work with formable grids which match grid intersection points with points that are significant for faces, such as the eyes, mouth and nose. Other facial recognition processes operate with characteristic vectors of the grey scale image, which must match the characteristic vectors of a face. However it would also appear feasible that the shape or size or environment of a possible face would simply be used to verify the skin tones."

Wolff at [0006]: |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | "Therefore, this process can be utilized automatically in all images which contain images of persons, without an operator having to manually intervene when taking images or performing corrections." <br><br> *See also, e.g.,* Wolff at [0001], [0003], [0006 - 7], [0009 - 11], [0020], [0023]. <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [a] identifying a group of pixels that correspond to a face image within the digital image; | This reference discloses identifying a group of pixels that correspond to a face image within the digital image, based upon at least the following exemplary citations: <br><br> Wolff at [0010]: <br> "**[0010]** For this reason, it is more advantageous to verify the image points which are marked as possible skin points based on their skin color by using a further verification criterion. Here, so called facial recognition processes can be used in a particularly |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | advantageous manner. Such processes are known, for example, from the field of red eye correction. Examples of such processes are described in EP 1 293 933 A1. Some of the known facial recognition processes operate using example faces which are compared to objects that are present in the image. Others work with formable grids which match grid intersection points with points that are significant for faces, such as the eyes, mouth and nose. Other facial recognition processes operate with characteristic vectors of the grey scale image, which must match the characteristic vectors of a face. However it would also appear feasible that the shape or size or environment of a possible face would simply be used to verify the skin tones. The advantage of such a process is that it is less costly and requires less intensive computing time; however, it may not be as precise under some circumstances as one of the facial recognition processes which is obtained from the object recognition processes. It is disadvantageous in the verification of skin points by means of facial recognition processes that it only identifies skin tones of actual faces. The skin tones of arms and legs or other body parts cannot be determined herein. However, processes can be used herein which, once a face has first been found, assign the skin regions which belong to a body by using the position, size and shape of the other skin tone colored image areas on the basis of causality considerations. Facial recognition processes can also be used in general for the identification of skin regions. Other skin regions can then be identified by searching for areas which are of the same color as the faces." <br><br> Wolff at [0023]: <br> "The image points which are determined to constitute skin points based on their skin color association can now be directly |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | corrected, or examined for their actual association with skin regions of persons. For example, facial recognition processes can be used in order to determine whether one of the image areas which is recognized as skin colors fulfills the criteria of being part of a face. If this is the case, this skin tone area, which can be verified through the use of the facial recognition process, is marked as an actual skin tone region to be corrected. As already mentioned, it is also possible to first identify faces and then mark all skin colored areas in their environment. Subsequently, other skin colored areas can be determined as being part of a person based on their position and size in relation to the face. The areas which are finally marked as skin tone colored are then subjected to the correction in accordance with the invention. Herein the color values of these image points are shifted in the color space in the direction of a defined, ideal skin tone characteristic curve 31." <br><br> Wolff at [0023]: <br> "The correction of the skin points takes place depending on the distance of the skin points from the skin tone characteristic curve 31. Herein the skin point 29 is shifted less far in the color space than, for example, the skin point 33, which is farther away from the ideal skin tone characteristic curve and is therefore shifted more strongly, that is, it is shown towards the corrected skin point 34. The skin points which lie directly on the ideal skin tone characteristic curve, such as skin point 35, remain unchanged." <br> *See also, e.g.,* Wolff at [0001], [0003], [0006 - 7], [0009 - 11], [0020], [0023]. <br><br> To the extent this limitation is not disclosed by this reference, it |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [b] generating in-camera, capturing or otherwise obtaining in-camera a stream of images including said face image; | This reference discloses generating in-camera, capturing or otherwise obtaining in-camera a stream of images including said face image, based upon at least the following exemplary citations:<br><br>Wolff at [0001]:<br>"**[0001]** The invention concerns a process for the automatic correction of skin colors in digital image data in accordance with the umbrella term of Claim 1."<br><br>Wolff at [0010]:<br>"**[0010]** For this reason, it is more advantageous to verify the image points which are marked as possible skin points based on their skin color by using a further verification criterion. Here, so called facial recognition processes can be used in a particularly advantageous manner. Such processes are known, for example, from the field of red eye correction. Examples of such processes are described in EP 1 293 933 A1. Some of the known facial |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | recognition processes operate using example faces which are compared to objects that are present in the image. Others work with formable grids which match grid intersection points with points that are significant for faces, such as the eyes, mouth and nose. Other facial recognition processes operate with characteristic vectors of the grey scale image, which must match the characteristic vectors of a face. However it would also appear feasible that the shape or size or environment of a possible face would simply be used to verify the skin tones. The advantage of such a process is that it is less costly and requires less intensive computing time; however, it may not be as precise under some circumstances as one of the facial recognition processes which is obtained from the object recognition processes. It is disadvantageous in the verification of skin points by means of facial recognition processes that it only identifies skin tones of actual faces. The skin tones of arms and legs or other body parts cannot be determined herein. However, processes can be used herein which, once a face has first been found, assign the skin regions which belong to a body by using the position, size and shape of the other skin tone colored image areas on the basis of causality considerations. Facial recognition processes can also be used in general for the identification of skin regions. Other skin regions can then be identified by searching for areas which are of the same color as the faces." |
| | Wolff at [0003]: "**[0003]** US 2002105662 describes a process in which the color of certain parts of the image contents, particularly the pictured faces, is altered in a targeted manner. An option which is submitted in this document for selecting the desired facial color consists of a camera user already specifying the desired skin |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | tone which the faces in the image should have in the reproduction when the user is taking the image. The camera then adds information to the image data set as to whether the skin tone is desired e.g. in Asian, Oriental or black tones." |
| | Wolff at [0007]: |
| | "**[0007]** The change in the color tones of the skin points is advantageously performed as a shift which is proportional to the distance of the color tone that is being corrected from the ideal skin color quantity in the color space. The farther the skin point that is to be corrected deviates from the skin color that is perceived as ideal in its color, the more strongly it is therefore shifted in the direction of the target quantity. It is thereby ensured that skin tones which are already perceived as comparatively pleasant - that is, skin tones which are close to the ideal skin color quantity - are only slightly altered, while skin colors which strongly deviate from this ideal color are influenced significantly more strongly. The influence on the color of the original data is therefore applied proportionally more intensely if the original impression is poorer. It is therefore ensured that the artificial influence is only strong in those areas where it is truly necessary, while images which are already good are scarcely altered." |
| | Wolff at [0023]: |
| | "The image points which are determined to constitute skin points based on their skin color association can now be directly corrected, or examined for their actual association with skin regions of persons. For example, facial recognition processes can be used in order to determine whether one of the image areas which is recognized as skin colors fulfills the criteria of |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | being part of a face. If this is the case, this skin tone area, which can be verified through the use of the facial recognition process, is marked as an actual skin tone region to be corrected. As already mentioned, it is also possible to first identify faces and then mark all skin colored areas in their environment. Subsequently, other skin colored areas can be determined as being part of a person based on their position and size in relation to the face. The areas which are finally marked as skin tone colored are then subjected to the correction in accordance with the invention. Herein the color values of these image points are shifted in the color space in the direction of a defined, ideal skin tone characteristic curve 31."<br><br>*See also, e.g.,* Wolff at [0001], [0003], [0006 - 7], [0009 - 11], [0020], [0023].<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [c] tracking said face image within said | This reference discloses tracking said face image within said |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| stream of images; | stream of images, based upon at least the following exemplary citations:<br><br>Wolff at [0010]:<br>"**[0010]** For this reason, it is more advantageous to verify the image points which are marked as possible skin points based on their skin color by using a further verification criterion. Here, so called facial recognition processes can be used in a particularly advantageous manner. Such processes are known, for example, from the field of red eye correction. Examples of such processes are described in EP 1 293 933 A1. Some of the known facial recognition processes operate using example faces which are compared to objects that are present in the image. Others work with formable grids which match grid intersection points with points that are significant for faces, such as the eyes, mouth and nose. Other facial recognition processes operate with characteristic vectors of the grey scale image, which must match the characteristic vectors of a face. However it would also appear feasible that the shape or size or environment of a possible face would simply be used to verify the skin tones. The advantage of such a process is that it is less costly and requires less intensive computing time; however, it may not be as precise under some circumstances as one of the facial recognition processes which is obtained from the object recognition processes. It is disadvantageous in the verification of skin points by means of facial recognition processes that it only identifies skin tones of actual faces. The skin tones of arms and legs or other body parts cannot be determined herein. However, processes can be used herein which, once a face has first been found, assign the skin regions which belong to a body by using the position, size and shape of the other skin tone colored image |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | areas on the basis of causality considerations. Facial recognition processes can also be used in general for the identification of skin regions. Other skin regions can then be identified by searching for areas which are of the same color as the faces." <br><br> *See also, e.g.,* Wolff at [0001], [0003], [0006 - 7], [0009 - 11], [0020], [0023]. <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [d] detecting a skin tone for the face image by determining one or more color or tonal values, or combinations thereof, for the group of pixels and comparing with one or more default color or tonal values, or combinations thereof; and | This reference discloses detecting a skin tone for the face image by determining one or more color or tonal values, or combinations thereof, for the group of pixels and comparing with one or more default color or tonal values, or combinations thereof, based upon at least the following exemplary citations: <br><br> Wolff at [0006]: <br> "**[0006]** In accordance with the invention, the color values of the image points which were determined as skin points in the digital |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | image data are automatically corrected by altering these color values so that they are shifted within the color space in the direction of a pre-determined cohesive ideal skin color quantity. The color of the skin point is, so to speak, drawn into the direction of this ideal skin color quantity. The ideal skin color quantity is a quantity of points in the color space whose color tone is perceived as a pleasant, attractive skin color by the observer. Image points which show colors that are elements of this ideal skin color quantity remain unchanged in this skin color correction. All other image data which are determined as being skin colored are displayed in the direction of this ideal skin color quantity. The ideal skin color quantity is pre-determined, and saved in advance for the correction process. For example, this can be done within the scope of a three-dimensional Look-Up Table (LUT); however, it is also possible to save it as a 1d characteristic curve or similar. The ideal skin color quantity is determined by evaluating a large number of images, from a large number of persons insofar as possible, and herein determining the skin colors which are perceived as pleasant. However the determination of such a skin color quantity can also be performed via a neuronal network. In the determination of this skin color quantity, it is important that many different image contents and many different observers are taken into account in the selection, so that significant statistics are obtained, so to speak. The ideal skin color points advantageously represent a cohesive quantity in the color space, so that rapid color changes are avoided in the corrected image data.  This prevents two color points which are adjacent in the original image data and are also next to each other in the image from having strongly differing image values in the corrected image. Therefore, gentle color transitions are also preserved in the corrected image. It is |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | especially advantageous in this process, in which skin colors are shown in the direction of a predefined skin color quantity, that this process can be applied equally to all digital images, regardless of the user, the image content, or other factors. Only the skin points have to be identified in the digital image data. As soon as these skin points are identified, only their color value is displayed in a pre-determined transformation to another color value. Therefore, this process can be utilized automatically in all images which contain images of persons, without an operator having to manually intervene when taking images or performing corrections. The determination of the ideal skin color quantity can also take place with great effort and therefore very precisely, since it only has to be determined once, and can therefore be used again repeatedly for all subsequent corrections. It is furthermore very advantageous in this process that the skin tones are not shown in a specific uniform color, but are only modified into a specific direction. Due to this, it is avoided that all digital images will have the same, generally rather artificially appearing, skin tone value after the correction; the color differences and therefore image specific color appearances are largely preserved; they are only slightly modified in their color tone in the direction of a color that is perceived as more pleasant." <br><br> Wolff at [0007]: <br> "**[0007]** The change in the color tones of the skin points is advantageously performed as a shift which is proportional to the distance of the color tone that is being corrected from the ideal skin color quantity in the color space. The farther the skin point that is to be corrected deviates from the skin color that is perceived as ideal in its color, the more strongly it is therefore |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | shifted in the direction of the target quantity. It is thereby ensured that skin tones which are already perceived as comparatively pleasant - that is, skin tones which are close to the ideal skin color quantity - are only slightly altered, while skin colors which strongly deviate from this ideal color are influenced significantly more strongly. The influence on the color of the original data is therefore applied proportionally more intensely if the original impression is poorer. It is therefore ensured that the artificial influence is only strong in those areas where it is truly necessary, while images which are already good are scarcely altered."<br><br>Wolff at [0009]:<br>"[0009] In an advantageous embodiment of the process, the image points that are to be corrected and which have color values of skin colors are identified by comparing their color values to the color values of pre-determined skin colors. If the color values are within a specific color space, the image points are marked as skin points, and are corrected. This process ensures that not only faces are marked as skin regions to be corrected, but in principle, all skin regions which appear in the image are subjected to the skin tone correction. In this process, however, it may occur that image points of objects which do not have any skin regions are corrected, since image points with skin colored color values also appear in these objects. This may result in undesired color falsifications of these objects. It is furthermore possible that skin tones are not detected and therefore not corrected in off-color images, since the colors are shifted in general."<br><br>Wolff at [0023]: |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | "The image points which are determined to constitute skin points based on their skin color association can now be directly corrected, or examined for their actual association with skin regions of persons. For example, facial recognition processes can be used in order to determine whether one of the image areas which is recognized as skin colors fulfills the criteria of being part of a face. If this is the case, this skin tone area, which can be verified through the use of the facial recognition process, is marked as an actual skin tone region to be corrected. As already mentioned, it is also possible to first identify faces and then mark all skin colored areas in their environment. Subsequently, other skin colored areas can be determined as being part of a person based on their position and size in relation to the face. The areas which are finally marked as skin tone colored are then subjected to the correction in accordance with the invention. Herein the color values of these image points are shifted in the color space in the direction of a defined, ideal skin tone characteristic curve 31." <br><br> Wolff at [0023]: <br> "The correction of the skin points takes place depending on the distance of the skin points from the skin tone characteristic curve 31. Herein the skin point 29 is shifted less far in the color space than, for example, the skin point 33, which is farther away from the ideal skin tone characteristic curve and is therefore shifted more strongly, that is, it is shown towards the corrected skin point 34. The skin points which lie directly on the ideal skin tone characteristic curve, such as skin point 35, remain unchanged." <br><br> *See also, e.g.,* Wolff at [0001], [0003], [0006 - 7], [0009 - 11], |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | [0020], [0023].<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [e] adjusting values of one or more parameters for the group of pixels, including adjusting a luminance of each face image separately depending on the skin tone of each face image. | This reference discloses adjusting values of one or more parameters for the group of pixels, including adjusting a luminance of each face image separately depending on the skin tone of each face image, based upon at least the following exemplary citations:<br><br>Wolff at [0007]:<br>"**[0007]** The change in the color tones of the skin points is advantageously performed as a shift which is proportional to the distance of the color tone that is being corrected from the ideal skin color quantity in the color space. The farther the skin point that is to be corrected deviates from the skin color that is perceived as ideal in its color, the more strongly it is therefore shifted in the direction of the target quantity. It is thereby ensured that skin tones which are already perceived as |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | comparatively pleasant - that is, skin tones which are close to the ideal skin color quantity - are only slightly altered, while skin colors which strongly deviate from this ideal color are influenced significantly more strongly. The influence on the color of the original data is therefore applied proportionally more intensely if the original impression is poorer. It is therefore ensured that the artificial influence is only strong in those areas where it is truly necessary, while images which are already good are scarcely altered." |
| | |
| | Wolff at [0009]: |
| | "[0009] In an advantageous embodiment of the process, the image points that are to be corrected and which have color values of skin colors are identified by comparing their color values to the color values of pre-determined skin colors. If the color values are within a specific color space, the image points are marked as skin points, and are corrected. This process ensures that not only faces are marked as skin regions to be corrected, but in principle, all skin regions which appear in the image are subjected to the skin tone correction. In this process, however, it may occur that image points of objects which do not have any skin regions are corrected, since image points with skin colored color values also appear in these objects. This may result in undesired color falsifications of these objects. It is furthermore possible that skin tones are not detected and therefore not corrected in off-color images, since the colors are shifted in general." |
| | |
| | Wolff at [0010]: |
| | "For this reason, it is more advantageous to verify the image points which are marked as possible skin points based on their |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | skin color by using a further verification criterion. Here, so called facial recognition processes can be used in a particularly advantageous manner. Such processes are known, for example, from the field of red eye correction. Examples of such processes are described in EP 1 293 933 A1. Some of the known facial recognition processes operate using example faces which are compared to objects that are present in the image. Others work with formable grids which match grid intersection points with points that are significant for faces, such as the eyes, mouth and nose. Other facial recognition processes operate with characteristic vectors of the grey scale image, which must match the characteristic vectors of a face." <br><br> Wolff at [0023]: <br> "The image points which are determined to constitute skin points based on their skin color association can now be directly corrected, or examined for their actual association with skin regions of persons. For example, facial recognition processes can be used in order to determine whether one of the image areas which is recognized as skin colors fulfills the criteria of being part of a face. If this is the case, this skin tone area, which can be verified through the use of the facial recognition process, is marked as an actual skin tone region to be corrected. As already mentioned, it is also possible to first identify faces and then mark all skin colored areas in their environment. Subsequently, other skin colored areas can be determined as being part of a person based on their position and size in relation to the face. The areas which are finally marked as skin tone colored are then subjected to the correction in accordance with the invention. Herein the color values of these image points are shifted in the color space in the direction of a defined, ideal skin |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | tone characteristic curve 31." |
|  | Wolff at [0023]: |
|  | "The correction of the skin points takes place depending on the distance of the skin points from the skin tone characteristic curve 31. Herein the skin point 29 is shifted less far in the color space than, for example, the skin point 33, which is farther away from the ideal skin tone characteristic curve and is therefore shifted more strongly, that is, it is shown towards the corrected skin point 34. The skin points which lie directly on the ideal skin tone characteristic curve, such as skin point 35, remain unchanged." |
|  | Wolff at [0020]: |
|  | "The information which is required for the gradation correction and off-color correction regarding the original densities and original color values of the image to be processed is usually obtained previously from the analysis of the image to be corrected or several images of the same image type, that is, images from the same film, from the same digital camera, or from the same order. These corrections which influence the color values of the image data are now followed by an image processing step 4 in which a color space transformation from the RGB [red green blue] color space to the lab color space is performed. The lab color space is suitable for the following processing steps, since only a change in the brightness signal, but not a change in the color values is planned within these steps.  It is therefore more advantageous for these processing steps to switch to the Lab color space, which consists of a luminance signal L and two chrominance signals a and b, wherein the chrominance value a embodies the red-green |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | coloring, and the chrominance value b, on the other hand, embodies the blue-yellow part of the image data." |
| | Wolff at [0011]: |
| | "**[0011]** In order to avoid off-color areas appearing in the corrected image in colors which are very similar to skin tones, the color tones of image points which are in the color space that is close to the skin points to be corrected are advantageously also altered in the direction of the ideal skin color quantity. However, the alteration is made more moderately, since this should only involve an adjustment, but not an actual skin tone correction. For example, the shift factor can be selected at a lower intensity. However, it can also be selected so that it drops with an increasing distance from the points which are actually intended to be corrected." |
| | *See also, e.g.,* Wolff at [0001], [0003], [0006 - 7], [0009 - 11], [0020], [0023]. |
| | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | cover pleading of these contentions. |
| **CLAIM 2** | |
| 2. The method of claim 1, wherein the adjusting values of luminance comprises selectively applying fill-flash to regions within the face image in an amount based on the detected skin tone to open up shadows within the face image. | This reference discloses selectively applying fill-flash to regions within the face image in an amount based on the detected skin tone to open up shadows within the face image, based upon at least the following exemplary citations:<br><br>Wolff at [0023]:<br>"The correction of the skin points takes place depending on the distance of the skin points from the skin tone characteristic curve 31. Herein the skin point 29 is shifted less far in the color space than, for example, the skin point 33, which is farther away from the ideal skin tone characteristic curve and is therefore shifted more strongly, that is, it is shown towards the corrected skin point 34. The skin points which lie directly on the ideal skin tone characteristic curve, such as skin point 35, remain unchanged."<br><br>Wolff at [0020]:<br>"The information which is required for the gradation correction and off-color correction regarding the original densities and original color values of the image to be processed is usually obtained previously from the analysis of the image to be corrected or several images of the same image type, that is, images from the same film, from the same digital camera, or from the same order. These corrections which influence the color values of the image data are now followed by an image processing step 4 in which a color space transformation from the RGB [red green blue] color space to the lab color space is performed. The lab color space is suitable for the following |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | processing steps, since only a change in the brightness signal, but not a change in the color values is planned within these steps.  It is therefore more advantageous for these processing steps to switch to the Lab color space, which consists of a luminance signal L and two chrominance signals a and b, wherein the chrominance value a embodies the red-green coloring, and the chrominance value b, on the other hand, embodies the blue-yellow part of the image data." |
| | |
| | Wolff at [0007]: |
| | "**[0007]** The change in the color tones of the skin points is advantageously performed as a shift which is proportional to the distance of the color tone that is being corrected from the ideal skin color quantity in the color space. The farther the skin point that is to be corrected deviates from the skin color that is perceived as ideal in its color, the more strongly it is therefore shifted in the direction of the target quantity. It is thereby ensured that skin tones which are already perceived as comparatively pleasant - that is, skin tones which are close to the ideal skin color quantity - are only slightly altered, while skin colors which strongly deviate from this ideal color are influenced significantly more strongly. The influence on the color of the original data is therefore applied proportionally more intensely if the original impression is poorer. It is therefore ensured that the artificial influence is only strong in those areas where it is truly necessary, while images which are already good are scarcely altered." |
| | |
| | Wolff at [0011]: |
| | "**[0011]** In order to avoid off-color areas appearing in the corrected image in colors which are very similar to skin tones, |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | the color tones of image points which are in the color space that is close to the skin points to be corrected are advantageously also altered in the direction of the ideal skin color quantity. However, the alteration is made more moderately, since this should only involve an adjustment, but not an actual skin tone correction. For example, the shift factor can be selected at a lower intensity. However, it can also be selected so that it drops with an increasing distance from the points which are actually intended to be corrected." *See also, e.g.,* Wolff at [0001], [0003], [0006 - 7], [0009 - 11], [0020], [0023]. To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 3 | |
| 3. The method of claim 1, further comprising repeating the identifying, | This reference discloses repeating the identifying, detecting and adjusting for a second face image having a different skin tone |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| detecting and adjusting for a second face image having a different skin tone than the first face image, and the adjusting values of one or more parameters comprises applying fill-flash to the two face images in different relative amounts depending on the different skin tones. | than the first face image, and the adjusting values of one or more parameters comprises applying fill-flash to the two face images in different relative amounts depending on the different skin tones, based upon at least the following exemplary citations:<br><br>Wolff at [0010]:<br>"For this reason, it is more advantageous to verify the image points which are marked as possible skin points based on their skin color by using a further verification criterion. Here, so called facial recognition processes can be used in a particularly advantageous manner. Such processes are known, for example, from the field of red eye correction. Examples of such processes are described in EP 1 293 933 A1. Some of the known facial recognition processes operate using example faces which are compared to objects that are present in the image. Others work with formable grids which match grid intersection points with points that are significant for faces, such as the eyes, mouth and nose. Other facial recognition processes operate with characteristic vectors of the grey scale image, which must match the characteristic vectors of a face. However it would also appear feasible that the shape or size or environment of a possible face would simply be used to verify the skin tones."<br><br>Wolff at [0023]:<br>"The image points which are determined to constitute skin points based on their skin color association can now be directly corrected, or examined for their actual association with skin regions of persons. For example, facial recognition processes can be used in order to determine whether one of the image areas which is recognized as skin colors fulfills the criteria of being part of a face. If this is the case, this skin tone area, which |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | can be verified through the use of the facial recognition process, is marked as an actual skin tone region to be corrected. As already mentioned, it is also possible to first identify faces and then mark all skin colored areas in their environment. Subsequently, other skin colored areas can be determined as being part of a person based on their position and size in relation to the face. The areas which are finally marked as skin tone colored are then subjected to the correction in accordance with the invention. Herein the color values of these image points are shifted in the color space in the direction of a defined, ideal skin tone characteristic curve 31."<br><br>Wolff at [0023]:<br>"The correction of the skin points takes place depending on the distance of the skin points from the skin tone characteristic curve 31. Herein the skin point 29 is shifted less far in the color space than, for example, the skin point 33, which is farther away from the ideal skin tone characteristic curve and is therefore shifted more strongly, that is, it is shown towards the corrected skin point 34. The skin points which lie directly on the ideal skin tone characteristic curve, such as skin point 35, remain unchanged."<br><br>Wolff at [0007]:<br>"**[0007]** The change in the color tones of the skin points is advantageously performed as a shift which is proportional to the distance of the color tone that is being corrected from the ideal skin color quantity in the color space. The farther the skin point that is to be corrected deviates from the skin color that is perceived as ideal in its color, the more strongly it is therefore shifted in the direction of the target quantity. It is thereby |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | ensured that skin tones which are already perceived as comparatively pleasant - that is, skin tones which are close to the ideal skin color quantity - are only slightly altered, while skin colors which strongly deviate from this ideal color are influenced significantly more strongly. The influence on the color of the original data is therefore applied proportionally more intensely if the original impression is poorer. It is therefore ensured that the artificial influence is only strong in those areas where it is truly necessary, while images which are already good are scarcely altered."<br><br>Wolff at [0009]:<br>"[0009] In an advantageous embodiment of the process, the image points that are to be corrected and which have color values of skin colors are identified by comparing their color values to the color values of pre-determined skin colors. If the color values are within a specific color space, the image points are marked as skin points, and are corrected. This process ensures that not only faces are marked as skin regions to be corrected, but in principle, all skin regions which appear in the image are subjected to the skin tone correction. In this process, however, it may occur that image points of objects which do not have any skin regions are corrected, since image points with skin colored color values also appear in these objects. This may result in undesired color falsifications of these objects. It is furthermore possible that skin tones are not detected and therefore not corrected in off-color images, since the colors are shifted in general."<br><br>Wolff at [0010]:<br>"For this reason, it is more advantageous to verify the image |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | points which are marked as possible skin points based on their skin color by using a further verification criterion. Here, so called facial recognition processes can be used in a particularly advantageous manner. Such processes are known, for example, from the field of red eye correction. Examples of such processes are described in EP 1 293 933 A1. Some of the known facial recognition processes operate using example faces which are compared to objects that are present in the image. Others work with formable grids which match grid intersection points with points that are significant for faces, such as the eyes, mouth and nose. Other facial recognition processes operate with characteristic vectors of the grey scale image, which must match the characteristic vectors of a face."<br><br>*See also, e.g.,* Wolff at [0001], [0003], [0006 - 7], [0009 - 11], [0020], [0023].<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| CLAIM 4 | |
| 4. The method of claim 1, further comprising repeating the identifying, detecting and adjusting for a second face image having a different skin tone than the first face image, and the adjusting comprises adjusting luminance values of pixels of the two face images in different relative amounts depending on the different skin tones. | This reference discloses repeating the identifying, detecting and adjusting for a second face image having a different skin tone than the first face image, and the adjusting comprises adjusting luminance values of pixels of the two face images in different relative amounts depending on the different skin tones, based upon at least the following exemplary citations:<br><br>Wolff at [0010]:<br>"For this reason, it is more advantageous to verify the image points which are marked as possible skin points based on their skin color by using a further verification criterion. Here, so called facial recognition processes can be used in a particularly advantageous manner. Such processes are known, for example, from the field of red eye correction. Examples of such processes are described in EP 1 293 933 A1. Some of the known facial recognition processes operate using example faces which are compared to objects that are present in the image. Others work with formable grids which match grid intersection points with points that are significant for faces, such as the eyes, mouth and nose. Other facial recognition processes operate with characteristic vectors of the grey scale image, which must match the characteristic vectors of a face. However it would also appear feasible that the shape or size or environment of a possible face would simply be used to verify the skin tones."<br><br>Wolff at [0023]:<br>"The image points which are determined to constitute skin points based on their skin color association can now be directly corrected, or examined for their actual association with skin regions of persons. For example, facial recognition processes |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | can be used in order to determine whether one of the image areas which is recognized as skin colors fulfills the criteria of being part of a face. If this is the case, this skin tone area, which can be verified through the use of the facial recognition process, is marked as an actual skin tone region to be corrected. As already mentioned, it is also possible to first identify faces and then mark all skin colored areas in their environment. Subsequently, other skin colored areas can be determined as being part of a person based on their position and size in relation to the face. The areas which are finally marked as skin tone colored are then subjected to the correction in accordance with the invention. Herein the color values of these image points are shifted in the color space in the direction of a defined, ideal skin tone characteristic curve 31."<br><br>Wolff at [0023]:<br>"The correction of the skin points takes place depending on the distance of the skin points from the skin tone characteristic curve 31. Herein the skin point 29 is shifted less far in the color space than, for example, the skin point 33, which is farther away from the ideal skin tone characteristic curve and is therefore shifted more strongly, that is, it is shown towards the corrected skin point 34. The skin points which lie directly on the ideal skin tone characteristic curve, such as skin point 35, remain unchanged."<br><br>Wolff at [0007]:<br>"**[0007]** The change in the color tones of the skin points is advantageously performed as a shift which is proportional to the distance of the color tone that is being corrected from the ideal skin color quantity in the color space. The farther the skin point |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | that is to be corrected deviates from the skin color that is perceived as ideal in its color, the more strongly it is therefore shifted in the direction of the target quantity. It is thereby ensured that skin tones which are already perceived as comparatively pleasant - that is, skin tones which are close to the ideal skin color quantity - are only slightly altered, while skin colors which strongly deviate from this ideal color are influenced significantly more strongly. The influence on the color of the original data is therefore applied proportionally more intensely if the original impression is poorer. It is therefore ensured that the artificial influence is only strong in those areas where it is truly necessary, while images which are already good are scarcely altered." |
| | Wolff at [0009]: "[0009] In an advantageous embodiment of the process, the image points that are to be corrected and which have color values of skin colors are identified by comparing their color values to the color values of pre-determined skin colors. If the color values are within a specific color space, the image points are marked as skin points, and are corrected. This process ensures that not only faces are marked as skin regions to be corrected, but in principle, all skin regions which appear in the image are subjected to the skin tone correction. In this process, however, it may occur that image points of objects which do not have any skin regions are corrected, since image points with skin colored color values also appear in these objects. This may result in undesired color falsifications of these objects. It is furthermore possible that skin tones are not detected and therefore not corrected in off-color images, since the colors are shifted in general." |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Wolff at [0010]: "For this reason, it is more advantageous to verify the image points which are marked as possible skin points based on their skin color by using a further verification criterion. Here, so called facial recognition processes can be used in a particularly advantageous manner. Such processes are known, for example, from the field of red eye correction. Examples of such processes are described in EP 1 293 933 A1. Some of the known facial recognition processes operate using example faces which are compared to objects that are present in the image. Others work with formable grids which match grid intersection points with points that are significant for faces, such as the eyes, mouth and nose. Other facial recognition processes operate with characteristic vectors of the grey scale image, which must match the characteristic vectors of a face." *See also, e.g.,* Wolff at [0001], [0003], [0006 - 7], [0009 - 11], [0020], [0023]. To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 5** | |
| 5. The method of claim 1, wherein the color or tonal values for the group of pixels comprise one or more average color or tonal values. | This reference discloses the color or tonal values for the group of pixels comprise one or more average color or tonal values, based upon at least the following exemplary citations:<br><br>Wolff at [0007]:<br>"**[0007]** The change in the color tones of the skin points is advantageously performed as a shift which is proportional to the distance of the color tone that is being corrected from the ideal skin color quantity in the color space. The farther the skin point that is to be corrected deviates from the skin color that is perceived as ideal in its color, the more strongly it is therefore shifted in the direction of the target quantity. It is thereby ensured that skin tones which are already perceived as comparatively pleasant - that is, skin tones which are close to the ideal skin color quantity - are only slightly altered, while skin colors which strongly deviate from this ideal color are influenced significantly more strongly. The influence on the color of the original data is therefore applied proportionally more intensely if the original impression is poorer. It is therefore ensured that the artificial influence is only strong in those areas where it is truly necessary, while images which are already good are scarcely altered."<br><br>Wolff at [0009]:<br>"[0009] In an advantageous embodiment of the process, the image points that are to be corrected and which have color |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | values of skin colors are identified by comparing their color values to the color values of pre-determined skin colors. If the color values are within a specific color space, the image points are marked as skin points, and are corrected. This process ensures that not only faces are marked as skin regions to be corrected, but in principle, all skin regions which appear in the image are subjected to the skin tone correction. In this process, however, it may occur that image points of objects which do not have any skin regions are corrected, since image points with skin colored color values also appear in these objects. This may result in undesired color falsifications of these objects. It is furthermore possible that skin tones are not detected and therefore not corrected in off-color images, since the colors are shifted in general." <br><br> *See also, e.g.,* Wolff at [0001], [0003], [0006 - 7], [0009 - 11], [0020], [0023]. <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | |
| CLAIM 6 | |
| 6. The method of claim 5, wherein the color or tonal values comprise multiple colors or tones, or combinations thereof, determined for each of multiple regions of the face image. | This reference discloses the color or tonal values comprise multiple colors or tones, or combinations thereof, determined for each of multiple regions of the face image, based upon at least the following exemplary citations:<br><br>Wolff at [0007]:<br>"**[0007]** The change in the color tones of the skin points is advantageously performed as a shift which is proportional to the distance of the color tone that is being corrected from the ideal skin color quantity in the color space. The farther the skin point that is to be corrected deviates from the skin color that is perceived as ideal in its color, the more strongly it is therefore shifted in the direction of the target quantity. It is thereby ensured that skin tones which are already perceived as comparatively pleasant - that is, skin tones which are close to the ideal skin color quantity - are only slightly altered, while skin colors which strongly deviate from this ideal color are influenced significantly more strongly. The influence on the color of the original data is therefore applied proportionally more intensely if the original impression is poorer. It is therefore ensured that the artificial influence is only strong in those areas where it is truly necessary, while images which are already good are scarcely altered."<br><br>Wolff at [0009]:<br>"[0009] In an advantageous embodiment of the process, the image points that are to be corrected and which have color values of skin colors are identified by comparing their color values to the color values of pre-determined skin colors. If the |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | color values are within a specific color space, the image points are marked as skin points, and are corrected. This process ensures that not only faces are marked as skin regions to be corrected, but in principle, all skin regions which appear in the image are subjected to the skin tone correction. In this process, however, it may occur that image points of objects which do not have any skin regions are corrected, since image points with skin colored color values also appear in these objects. This may result in undesired color falsifications of these objects. It is furthermore possible that skin tones are not detected and therefore not corrected in off-color images, since the colors are shifted in general."<br><br>*See also, e.g.,* Wolff at [0001], [0003], [0006 - 7], [0009 - 11], [0020], [0023].<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 7** |  |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| 7. [pre] An image acquisition apparatus including an imaging optical system and digital image detector and storage medium, and having stored therein program instructions for programming one or more processors to perform a method of processing a digital image using face detection to achieve one or more desired image processing parameters, the method comprising: | To the extent the preamble is limiting, this reference discloses An image acquisition apparatus including an imaging optical system and digital image detector and storage medium, and having stored therein program instructions for programming one or more processors to perform a method of processing a digital image using face detection to achieve one or more desired image processing parameters, based upon at least the following exemplary citations:<br><br>*See, e.g.,* Wolff at cover:<br>"The correction of the skin points takes place by displaying the color tone of these points in the color space in the direction of a predetermined, cohesive, ideal skin color quantity."<br><br>Wolff at [0010]:<br>"For this reason, it is more advantageous to verify the image points which are marked as possible skin points based on their skin color by using a further verification criterion. Here, so called facial recognition processes can be used in a particularly advantageous manner. Such processes are known, for example, from the field of red eye correction. Examples of such processes are described in EP 1 293 933 A1. Some of the known facial recognition processes operate using example faces which are compared to objects that are present in the image. Others work with formable grids which match grid intersection points with points that are significant for faces, such as the eyes, mouth and nose. Other facial recognition processes operate with characteristic vectors of the grey scale image, which must match the characteristic vectors of a face. However it would also appear feasible that the shape or size or environment of a possible face would simply be used to verify the skin tones." |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | Wolff at [0006]:<br>"Therefore, this process can be utilized automatically in all images which contain images of persons, without an operator having to manually intervene when taking images or performing corrections."<br><br>*See also, e.g.,* Wolff at [0001], [0003], [0006 - 7], [0009 - 11], [0020], [0023].<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [a] identifying a group of pixels that correspond to a face image within the digital image; | This reference discloses identifying a group of pixels that correspond to a face image within the digital image, based upon at least the following exemplary citations:<br><br>*See, e.g.*, disclosures in claim element 1[a].<br><br>To the extent this limitation is not disclosed by this reference, it |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [b] generating in-camera, capturing or otherwise obtaining in-camera a stream of images including said face image; | This reference discloses generating in-camera, capturing or otherwise obtaining in-camera a stream of images including said face image, based upon at least the following exemplary citations:<br><br>*See, e.g.,* disclosures in claim element 1[b].<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [c] tracking said face image within said stream of images; | This reference discloses tracking said face image within said stream of images, based upon at least the following exemplary citations:<br><br>*See, e.g.,* disclosures in claim element 1[c].<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [d] detecting a skin tone for the face image by determining one or more color or tonal values, or combinations thereof, for the group of pixels and comparing with one or more default color or tonal values, or combinations thereof; and | This reference discloses detecting a skin tone for the face image by determining one or more color or tonal values, or combinations thereof, for the group of pixels and comparing with one or more default color or tonal values, or combinations thereof, based upon at least the following exemplary citations:<br><br>*See, e.g.,* disclosures in claim element 1[d]. |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [e] adjusting values of one or more parameters for the group of pixels, including adjusting a luminance of each face image separately depending on the skin tone of each face image. | This reference discloses adjusting values of one or more parameters for the group of pixels, including adjusting a luminance of each face image separately depending on the skin tone of each face image, based upon at least the following exemplary citations:<br><br>*See, e.g.,* disclosures in claim element 1[e].<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 8** | |
| 8. The apparatus of claim 7, wherein the adjusting values of luminance comprises selectively applying fill-flash to regions within the face image in an amount based on the detected skin tone to open up shadows within the face image. | This reference discloses selectively applying fill-flash to regions within the face image in an amount based on the detected skin tone to open up shadows within the face image, based upon at least the following exemplary citations: <br><br> *See, e.g.,* disclosures in claim 2. <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 9** | |
| 9. The apparatus of claim 7, wherein the method further comprises repeating the identifying, detecting and adjusting for a | This reference discloses repeating the identifying, detecting and adjusting for a second face image having a different skin tone than the first face image, and the adjusting values of one or more |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| second face image having a different skin tone than the first face image, and the adjusting comprises applying fill-flash to the two face images in different relative amounts depending on the different skin tones. | parameters comprises applying fill-flash to the two face images in different relative amounts depending on the different skin tones, based upon at least the following exemplary citations:<br><br>*See, e.g.,* disclosures in claim 3.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 10** | |
| 10. The apparatus of claim 9, wherein the method further comprises repeating the identifying, detecting and adjusting for a second face image having a different skin tone than the first face image, and the adjusting comprises adjusting luminance values of pixels of the two face images in different relative amounts depending on the different skin tones. | This reference discloses repeating the identifying, detecting and adjusting for a second face image having a different skin tone than the first face image, and the adjusting comprises adjusting luminance values of pixels of the two face images in different relative amounts depending on the different skin tones, based upon at least the following exemplary citations:<br><br>*See, e.g.,* disclosures in claim 4.<br><br>To the extent this limitation is not disclosed by this reference, it |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 11** |  |
| 11. The apparatus of claim 7, wherein the color or tonal values for the group of pixels comprise one or more average color or tonal values. | This reference discloses the color or tonal values for the group of pixels comprise one or more average color or tonal values, based upon at least the following exemplary citations:<br><br>*See, e.g.,* disclosures in claim 5.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the ''932 Patent'')**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig (''Wolff'')**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 12 | |
| 12. The apparatus of claim 11, wherein the color or tonal values comprise multiple colors or tones, or combinations thereof, determined for each of multiple regions of the face image. | This reference discloses the color or tonal values comprise multiple colors or tones, or combinations thereof, determined for each of multiple regions of the face image, based upon at least the following exemplary citations:<br><br>*See, e.g.,* disclosures in claim 6.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 13 | |
| 13. [pre] One or more non-transitory digital storage devices having embodied therein program instructions for programming one or more processors to perform a method of processing a digital image using face | To the extent the preamble is limiting, this reference discloses An image acquisition apparatus including an imaging optical system and digital image detector and storage medium, and having stored therein program instructions for programming one or more processors to perform a method of processing a digital |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| detection to achieve one or more desired image processing parameters, the method comprising: | image using face detection to achieve one or more desired image processing parameters, based upon at least the following exemplary citations:<br><br>*See, e.g.,* Wolff at cover:<br>"The correction of the skin points takes place by displaying the color tone of these points in the color space in the direction of a predetermined, cohesive, ideal skin color quantity."<br><br>Wolff at [0010]:<br>"For this reason, it is more advantageous to verify the image points which are marked as possible skin points based on their skin color by using a further verification criterion. Here, so called facial recognition processes can be used in a particularly advantageous manner. Such processes are known, for example, from the field of red eye correction. Examples of such processes are described in EP 1 293 933 A1. Some of the known facial recognition processes operate using example faces which are compared to objects that are present in the image. Others work with formable grids which match grid intersection points with points that are significant for faces, such as the eyes, mouth and nose. Other facial recognition processes operate with characteristic vectors of the grey scale image, which must match the characteristic vectors of a face. However it would also appear feasible that the shape or size or environment of a possible face would simply be used to verify the skin tones."<br><br>Wolff at [0006]:<br>"Therefore, this process can be utilized automatically in all images which contain images of persons, without an operator having to manually intervene when taking images or performing |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | corrections."<br><br>*See also, e.g.,* Wolff at [0001], [0003], [0006 - 7], [0009 - 11], [0020], [0023].<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [a] identifying a group of pixels that correspond to a face image within the digital image; | This reference discloses identifying a group of pixels that correspond to a face image within the digital image, based upon at least the following exemplary citations:<br><br>*See, e.g.,* disclosures in claim element 1[a].<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
|  | Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [b] generating in-camera, capturing or otherwise obtaining in-camera a stream of images including said face image; | This reference discloses generating in-camera, capturing or otherwise obtaining in-camera a stream of images including said face image, based upon at least the following exemplary citations:<br><br>*See, e.g.,* disclosures in claim element 1[b].<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [c] tracking said face image within said stream of images; | This reference discloses tracking said face image within said stream of images, based upon at least the following exemplary |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | citations:<br><br>*See, e.g.,* disclosures in claim element 1[c].<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [d] detecting a skin tone for the face image by determining one or more color or tonal values, or combinations thereof, for the group of pixels and comparing with one or more default color or tonal values, or combinations thereof; and | This reference discloses detecting a skin tone for the face image by determining one or more color or tonal values, or combinations thereof, for the group of pixels and comparing with one or more default color or tonal values, or combinations thereof, based upon at least the following exemplary citations:<br><br>*See, e.g.,* disclosures in claim element 1[d].<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| [e] adjusting values of one or more parameters for the group of pixels, including adjusting a luminance of each face image separately depending on the skin tone of each face image. | This reference discloses adjusting values of one or more parameters for the group of pixels, including adjusting a luminance of each face image separately depending on the skin tone of each face image, based upon at least the following exemplary citations:<br><br>*See, e.g.,* disclosures in claim element 1[e].<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| **CLAIM 14** | |
| 14. The one or more storage devices of claim 13, wherein the adjusting values of luminance comprises selectively applying fill-flash to regions within the face image in an amount based on the detected skin tone to open up shadows within the face image. | This reference discloses selectively applying fill-flash to regions within the face image in an amount based on the detected skin tone to open up shadows within the face image, based upon at least the following exemplary citations:<br><br>*See, e.g.,* disclosures in claim 2.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 15** | |
| 15. The one or more storage devices of claim 13, wherein the method further comprises repeating the identifying, detecting and adjusting for a second face image having a different skin tone than the first face image, and the adjusting comprises applying fill-flash to the two face images in different relative amounts depending on the | This reference discloses repeating the identifying, detecting and adjusting for a second face image having a different skin tone than the first face image, and the adjusting values of one or more parameters comprises applying fill-flash to the two face images in different relative amounts depending on the different skin tones, based upon at least the following exemplary citations:<br><br>*See, e.g.,* disclosures in claim 3. |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| different skin tones. | To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| **CLAIM 16** | |
| 16. The one or more storage devices of claim 13, wherein the method further comprises repeating the identifying, detecting and adjusting for a second face image having a different skin tone than the first face image, and the adjusting comprises adjusting luminance values of pixels of the two face images in different relative amounts depending on the different skin tones. | This reference discloses repeating the identifying, detecting and adjusting for a second face image having a different skin tone than the first face image, and the adjusting comprises adjusting luminance values of pixels of the two face images in different relative amounts depending on the different skin tones, based upon at least the following exemplary citations: <br><br> *See, e.g.,* disclosures in claim 4. <br><br> To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| | Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 17 | |
| 17. The one or more storage devices of claim 13, wherein the color or tonal values for the group of pixels comprise one or more average color or tonal values. | This reference discloses the color or tonal values for the group of pixels comprise one or more average color or tonal values, based upon at least the following exemplary citations:<br><br>*See, e.g.*, disclosures in claim 5.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |
| CLAIM 18 | |
| 18. The one or more storage devices of | This reference discloses the color or tonal values comprise |

**Exhibit J-12**
**Invalidity of U.S. Patent No. 8,908,932 (the "'932 Patent")**
**Due to European Patent Publication EP 1 489 832 to Wolff and Konig ("Wolff")**

| Claim Limitation | Prior Art Disclosure |
|---|---|
| claim 17, wherein the color or tonal values comprise multiple colors or tones, or combinations thereof, determined for each of multiple regions of the face image. | multiple colors or tones, or combinations thereof, determined for each of multiple regions of the face image, based upon at least the following exemplary citations:<br><br>*See, e.g.,* disclosures in claim 6.<br><br>To the extent this limitation is not disclosed by this reference, it would have been obvious to one of ordinary skill in the art. To the extent this limitation is not disclosed or rendered obvious by this reference alone, it would have been rendered obvious by combining this reference with any of the other references in Exhibit A of these contentions that disclose this limitation. Exemplary combinations are also identified in Exhibit B of these contentions. One skilled in the art would have been motivated to combine this reference with any of the other references in Exhibit A of these contentions that disclose this limitation, and would have expected the combinations to be successful and to produce desirable and expected results for reasons stated in the cover pleading of these contentions. |